**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**PAUL (RICK) RAUCH**
**MARC A.W. STEARNS**
Harrison & Moberly, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JAMIE H. HARVEY**
Smith Harvey Law Office
Connersville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HICKORY CREEK AT CONNERSVILLE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 21A04-1211-ES-600 |
| | ) | |
| ESTATE OF OTTO K. COMBS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |

INTERLOCUTORY APPEAL FROM THE FAYETTE CIRCUIT COURT
The Honorable Eugene A. Stewart, Judge
Cause No. 21C01-1203-ES-048

**June 27, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

According to the doctrine of necessaries, each spouse is primarily liable for his or her independent debts. To the extent that the debtor spouse is unable to satisfy his or her own necessary expenses, the law will impose limited secondary liability upon the financially superior spouse by means of the doctrine of necessaries.

In this case, Marianne Combs, a Medicaid recipient, died in a nursing home, but no estate was opened for her. The nursing home did not open a creditor's estate for Marianne in order to preserve its claim. When Marianne's spouse died a little over a year later, the nursing home filed a claim for her expenses against his estate. We find that according to the doctrine of necessaries, a creditor must first seek satisfaction from the income and property of the spouse who incurred the debt and only if those resources are insufficient may a creditor seek satisfaction from the non-contracting spouse.

**Facts and Procedural History**

Marianne Combs and Otto Combs were married. Marianne was a resident of Hickory Creek, a long-term care facility in Connersville, Indiana. Appellant's App. p. 5, 45 (Joint Stipulation of Facts). Marianne's daughter, Wanda Ferriell, was Marianne's Durable Power of Attorney for Health Care; Wanda admitted Marianne into Hickory Creek, signing as her financial guarantor. *Id.* at 5, 35, 38. During her residency, Marianne received Medicaid,[1] but she accrued a private-pay account balance of

---

[1] According to FSSA:

Established in 1965, Medicaid is a state and federally funded health care program designed to assist low income individuals and families. In order to qualify for Medicaid assistance the individual/family must meet certain eligibility requirements. The Medicaid

$5871.40. *Id.* at 45 (Joint Stipulation of Facts). Marianne died on December 22, 2010. *Id.* No estate was opened for Marianne.[2] *Id.*

In July 2011, Hickory Creek filed a complaint against Wanda and Otto for Marianne's account balance. Appellant's Supp. App. p. 75. Hickory Creek's theory was that Wanda signed as Marianne's "financial guarantor" and Otto was Marianne's "surviving spouse." *Id.*

On January 12, 2012, Otto died. *Id.* An estate was opened for Otto on July 25, 2012. Appellant's App. at 2, 45 (Joint Stipulation of Facts). On August 1, 2012, Hickory Creek filed a claim against Otto's Estate for Marianne's account balance pursuant to Indiana's doctrine of necessaries. *Id.* at 2, 5, 45 (Joint Stipulation of Facts). Otto's Estate denied the claim and requested that the matter be set for trial. Following a hearing, the trial court denied Hickory Creek's claim against Otto's Estate. *Id.* at 59. The court reasoned that Hickory Creek's failure to file a claim upon Marianne's death was a bar to recovery under the doctrine of necessaries. *Id.* The court also reasoned that Wanda admitted Marianne into Hickory Creek, not Otto. *Id.*

---

program is administered on the state level; as a result, some requirements and rules vary from state to state.

In Indiana, Medicaid is administered through the Family and Social Services Administration (FSSA) by the Department of Family Resources (DFR). Changes to the Medicaid program come from the Indiana General Assembly as well as the Center for Medicare and Medicaid Services (CMS).

FSSA, *Low-Income Assistance/Medicaid*, http://www.in.gov/idoi/files/Nav_Guide_4_Section_ O_Low_Income_Assistance.01_08_pub.pdf (last visited June 6, 2013).

[2] Marianne had an interest in property she held with Otto as joint tenants with rights of survivorship, which Marianne lost upon her death. Appellant's App. p. 53.

3

This discretionary interlocutory appeal pursuant to Indiana Appellate Rule 14(B) now ensues.

**Discussion and Decision**

Hickory Creek contends that the trial court erred in denying its claim against Otto's Estate. Specifically, Hickory Creek argues that the doctrine of necessaries did not require it to open up and then make a claim against Marianne's estate, which it alleges would not have had any assets. Hickory Creek argues this is so because the doctrine of necessaries "allows a creditor to file a claim against a spouse for a decedent debtor's unpaid medical necessaries without wasting time, its money and the court's resources opening an insolvent debtor's estate to preserve its claim against the debtor's spouse." Appellant's Br. p. 4.

The doctrine of necessaries originated at a time in which married women had been stripped of virtually all means of self-support by their incapacity to contract. *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 3 (Ind. 1993). During this time, married women were dependent on their husbands, who had a common-law duty to support their wives. *Id.* The doctrine of necessaries was developed to protect women whose husbands, despite their common-law duty, failed to provide necessary support. *Porter Mem'l Hosp. v. Wozniak*, 680 N.E.2d 13, 16 (Ind. Ct. App. 1997). Under the doctrine of necessaries, women were able to purchase necessary goods and services on their husband's credit, making the husband liable. *Bartrom*, 618 N.E.2d at 3. After women were given the legal ability to contract in their own name, the doctrine was infrequently invoked, but it did not die. *Wozniak*, 680 N.E.2d at 16. In *Memorial Hospital v. Hahaj*, 430 N.E.2d 412 (Ind.

4

Ct. App. 1982), *abrogated by Bartrom*, 618 N.E.2d 1, this Court agreed with *Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum*, 417 A.2d 1003 (N.J. 1980), and ruled that the doctrine of necessaries should be applied in a gender-neutral manner to apply to debts created by both wives and husbands. Because of disagreement about the continued vitality of the doctrine among several states and concern over *Memorial Hospital*, our Supreme Court in *Bartrom* clarified how the doctrine of necessaries was to operate in Indiana.

That is, according to the doctrine of necessaries, each spouse is primarily liable for his or her independent debts. *Bartrom*, 618 N.E.2d at 8. Typically, a creditor may look to a non-contracting spouse for satisfaction of the debts of the other only if the non-contracting spouse has otherwise agreed to contractual liability *or* can be said to have authorized the debt by implication under the laws of agency. *Id.* Agency requires some indicia that the principal intended or authorized the agent to conduct business on his or her behalf. *See Quality Foods, Inc. v. Holloway Assocs. Prof'l Eng'rs & Land Surveyors, Inc.*, 852 N.E.2d 27, 31-32 (Ind. Ct. App. 2006). Marriage alone is insufficient. A number of methods are available to prove this, such as a durable power of attorney, guardianship, or evidence of a conversation.

When, however, there is a shortfall between a dependent spouse's necessary expenses and separate funds, the law will impose limited secondary liability upon the financially superior spouse by means of the doctrine of necessaries. *Bartrom*, 618 N.E.2d at 8. The liability is characterized as "limited" because its outer boundaries are marked by the financially superior spouse's ability to pay *at the time the debt was incurred*. *Id.*

5

It is "secondary" in the sense that it exists only to the extent that the debtor spouse is unable to satisfy his or her own personal needs or obligations. *Id.* These rules assist enforcement of the marital duty of support in both a workable and an equitable manner.[3] *Id.* & n.14.

Otto's Estate argues that this case is "remarkably" similar to *South Bend Clinic v. Estate of Ruffing*, 501 N.E.2d 1114 (Ind. Ct. App. 1986). Appellee's Br. p. 7. In that case, Edna Ruffing and Frank Ruffing, Jr., were married. South Bend Clinic provided medical services to Edna, who passed away. South Bend Clinic did not file a claim against Edna's Estate, although Edna's Estate made a partial payment to South Bend Clinic for Edna's medical expenses. When Frank later died, South Bend Clinic filed a claim for the balance of Edna's medical expenses against Frank's Estate. Frank's Estate filed a motion for summary judgment alleging that South Bend Clinic's claim was barred because it failed to file a claim against Edna's Estate. The trial court entered summary judgment in favor of Frank's Estate.

On appeal, this Court, in explaining primary and secondary liability, held that "a creditor must first seek satisfaction from the income and property of the spouse who incurred the debt. Only if those resources are insufficient may a creditor seek satisfaction from the other income and property of the marital relationship." *South Bend Clinic*, 501 N.E.2d at 1116 (citing *Jersey Shore Med. Ctr.*, 417 A.2d 1003). This Court explained that because it was Edna who incurred the medical expenses, South Bend Clinic had to first seek satisfaction from her income and property. But because South Bend Clinic did

---

[3] We question the viability of the antiquated doctrine of necessaries. Nonetheless, since it remains Indiana law, we analyze this case according to that precedent.

not timely do so, its claim was forever barred. *Id.* at 1116-17. As for South Bend Clinic's argument that there were no assets in Edna's Estate and therefore it would have been a vain or useless act to file a claim, this Court noted that had South Bend Clinic filed a claim, it could have preserved its right to any newly discovered assets. *Id.* at 1117. This Court therefore affirmed the trial court. *Id.*

Hickory Creek argues that Otto's Estate's analogy to *South Bend Clinic* "comes up short" because it was decided before *Bartrom*, and *South Bend Clinic* relied on *Memorial Hospital*, which our Supreme Court abrogated in *Bartrom*.[4] Appellant's Reply Br. p. 3. We note, however, that our Supreme Court did not mention *South Bend Clinic* in *Bartrom* and therefore *South Bend Clinic* still appears, at least facially, to be good law. *See* 25 Aline F. Anderson & Diane Hubbard Kennedy, *Indiana Practice*, *Anderson's Probate Forms*, § 2:205 (2012) (citing *South Bend Clinic*). But even if *South Bend Clinic* did not survive *Bartrom*, a creditor must first seek satisfaction from the income and property of the spouse who incurred the debt. And only if those resources are insufficient may a creditor seek satisfaction from the non-contracting spouse. This is because the doctrine of necessaries imposes *secondary* liability on the non-contracting spouse, not primary liability. And secondary liability exists only to the extent that the debtor spouse is unable to satisfy his or her own personal needs or obligations. *Bartrom*, 618 N.E.2d at 8.

Allowing a creditor to first pursue a non-contracting spouse erodes the concept of secondary liability in at least two ways. First, it allows a creditor to file suit against the

---

[4] Hickory Creek also argues that *South Bend Clinic* is distinguishable because an estate was opened for Edna and South Bend Clinic received a partial payment for her medical expenses whereas no estate was opened for Marianne and Hickory Creek did not receive a partial payment for her nursing-home expenses. However, the salient fact remains the same in both cases: neither South Bend Clinic nor Hickory Creek filed a claim against either Edna or Marianne.

7

non-contracting spouse after making its own determination that the debtor spouse has no income or property. Second, it shifts the burden of proving the financial inability of the debtor spouse from the creditor to the non-contracting spouse. This is not the purpose of the doctrine of necessaries.

Here, Hickory Creek essentially determined for itself that Marianne had no assets.[5] Hickory Creek claims, without any citation to the record, that Marianne had no assets because Indiana approved her Medicaid application and that it tried to collect her balance for several months before her death to no avail.[6] Also without any citation to the record, Hickory Creek claims that after Marianne's death, it conducted an investigation into her possible assets and determined that she lacked the financial resources to pay her account balance. Hickory Creek asserts that this justified its decision not to open an estate for Marianne just "for the sake of preserving its claim." Appellant's Reply Br. p. 8.

We disagree and find that Hickory Creek was first required to file a claim against Marianne to determine whether she was unable to satisfy her obligations. And because Marianne had passed away and no estate was opened for her, this meant that Hickory Creek, as a creditor, should have opened an estate for her, which it was permitted to do as an interested person. *See* Ind. Code §§ 29-1-1-3, 29-1-7-4. However, Hickory Creek did not do so. And now, it cannot do so because the time has passed. *See* Ind. Code § 29-1-

---

[5] Citing *Wozniak*, Hickory Creek argues that Marianne's Medicaid status indicated that a shortfall existed between her necessary expenses and her funds. Appellant's Reply Br. p. 7. In *Wozniak*, the debtor was discharged from bankruptcy before she paid her hospital bill, and the hospital pursued her husband pursuant to the doctrine of necessaries. 680 N.E.2d at 16. Here, however, no shortfall was ever determined to exist.

[6] For example, Hickory Creek baldly asserts that "Mr. Combs never opened an estate for his wife because she possessed no assets to probate." Appellant's Reply Br. p. 3.

14-1 (non-claim statute which provides that claims against a decedent's estate shall be "forever barred" unless filed against the estate within three months after the date of the first published notice to creditors *or* within nine months after the decedent's death); Appellant's Br. p. 8-9 & Reply Br. p. 5 (Hickory Creek conceding that Indiana law bars a claim against Marianne's estate at this point).

Nevertheless, Hickory Creek claims that requiring it to open an estate for Marianne, a Medicaid recipient, would "inundate the court system with unnecessary filings" and "does not make sense from a public policy standpoint to force nursing homes to preserve their claim in an estate, by filing a fruitless petition to open an estate and subsequently close it, once it is shown the decedent had no money." Appellant's Reply Br. p. 8. But as noted by the Court in *Bartrom*, there could be newly discovered assets. And regardless, although this case involves an estate, it does not mean that all cases involving the doctrine of necessaries will; the doctrine applies to living spouses, divorcing spouses, nursing-home expenses, and medical expenses. Policy cannot be based solely on a deceased Medicaid recipient in a nursing home. The doctrine of necessaries is based on the concept that the non-contracting spouse is liable only to the extent that the debtor spouse is unable to satisfy his or her own personal needs or obligations. Accordingly, because Hickory Creek did not first pursue Marianne, the trial court did not err in denying Hickory Creek's claim against Otto's Estate.[7]

---

[7] In addition, we note that the evidence shows that Wanda was Marianne's Durable Power of Attorney for Health Care, admitted her into Hickory Creek, and signed as her financial guarantor. According to *Bartrom*, a creditor may look to a non-contracting spouse for satisfaction of the debts of the other only if the non-contracting spouse has otherwise agreed to contractual liability *or* can be said to have authorized the debt by implication under the laws of agency. Marriage alone is insufficient.

Affirmed.

KIRSCH, J., and PYLE, J., concur.

---

Hickory Creek has failed to point to any evidence that Otto authorized the debt. The trial court essentially made this finding when it said that Wanda admitted Marianne into Hickory Creek, not Otto.