**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Embassy Healthcare v. Bell,* **Slip Opinion No. 2018-Ohio-4912.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4912

EMBASSY HEALTHCARE, D.B.A. CARLISLE MANOR HEALTHCARE, APPELLEE, *v.* BELL, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Embassy Healthcare v. Bell,* Slip Opinion No. 2018-Ohio-4912.]

*Creditor must present claim for unpaid necessaries to decedent's estate under R.C. 2117.06 before it can pursue claim individually against surviving spouse under R.C. 3103.03.*

(No. 2017-1031—Submitted July 18, 2018—Decided December 12, 2018.)

APPEAL from the Court of Appeals for Warren County, No. CA2016-08-072, 2017-Ohio-1499.

_____

**FRENCH, J.**

{¶ 1} In this appeal, we consider whether a creditor's failure to present its claim for unpaid expenses to a decedent's estate within the six-month statute of limitations in R.C. 2117.06 bars a later action against the decedent's surviving

spouse under R.C. 3103.03, Ohio's necessaries statute. A divided panel of the Twelfth District Court of Appeals reversed the trial court's grant of summary judgment in favor of defendant-appellant, Cora Sue Bell, and concluded that plaintiff-appellee, Embassy Healthcare, d.b.a Carlisle Manor Healthcare, could pursue its claim against Cora individually under R.C. 3103.03 and was not required to present its claim to the estate of her deceased husband, Robert Bell.

{¶ 2} We conclude that a creditor must present its claim for unpaid necessaries to the decedent's estate under R.C. 2117.06 before it can pursue a claim individually against the surviving spouse under R.C. 3103.03. We therefore reverse the Twelfth District's judgment.

## The Necessaries Doctrine
## and the Relevant Statutes

{¶ 3} This appeal requires us to examine the interplay between R.C. 3103.03, Ohio's necessaries statute, and R.C. 2117.06, the statute that governs the presentation of creditors' claims against a decedent's estate.

{¶ 4} We begin with R.C. 3103.03, which codifies the common-law necessaries doctrine. That doctrine held that a husband was liable to third parties for necessaries—i.e., food, shelter, clothing, and medical services—that those third parties provided to his wife. *Howard v. Whetstone Twp. Trustees,* 10 Ohio 365, 368 (1841); *Wolf v. Friedman*, 20 Ohio St.2d 49, 53, 253 N.E.2d 761 (1969). The doctrine emerged as a response to the legal disabilities placed on married women under coverture, by which a married woman's legal identity merged with her husband's. *Phillips v. Graves*, 20 Ohio St. 371, 380 (1870). A married woman could not own property, enter into contracts, or receive credit as an individual. *Id*. By holding a husband liable to those who provided necessaries to his wife, the necessaries doctrine encouraged third parties to provide essential items and services to neglected wives. *In re Rauscher*, 40 Ohio App.3d 106, 531 N.E.2d 745 (8th Dist.1987).

{¶ 5} Ohio has abolished coverture. *See Damm v. Elyria Lodge No. 465, Benevolent Protective Order of Elks*, 158 Ohio St. 107, 107 N.E.2d 337 (1952), paragraph one of the syllabus (enumerating statutes that have abolished the common-law doctrine of merging a married woman's legal identity into her husband's). But it has kept the doctrine of necessaries, as codified in R.C. 3103.03.

{¶ 6} Early versions of R.C. 3103.03 imposed on the husband the duty to support "himself, his wife, and his minor children out of his property or by his labor." *See, e.g.*, former R.C. 3103.03(A), Am.Sub.S.B. No. 1, 135 Ohio Laws, Part I, 7, 19. The General Assembly subsequently amended the statute by removing all references to "husband" and "wife" and using the gender-neutral phrase "married person," so that the duty of support now extends to both spouses.

{¶ 7} R.C. 3103.03 states:

> (A) Each married person must support the person's self and spouse out of the person's property or by the person's labor. If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able. * * *
>
> * * *
>
> (C) If a married person neglects to support the person's spouse in accordance with this section, any other person, in good faith, may supply the spouse with necessaries for the support of the spouse and recover the reasonable value of the necessaries supplied from the married person who neglected to support the spouse unless the spouse abandons that person without cause.

{¶ 8} Also at issue here is R.C. 2117.06(A), which states that "[a]ll creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured,

liquidated or unliquidated, shall present their claims" in accordance with the requirements in R.C. 2117.06. "[A]ll claims shall be presented within six months after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that six-month period." R.C. 2117.06(B). "[A] claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees." R.C. 2117.06(C).

**Facts And Procedural History**

{¶ 9} Embassy operates the nursing facility in which Robert stayed at some point in 2014 before his death. On January 9, 2014, Robert entered into an admission agreement with Embassy under which the facility agreed to provide him with certain goods and services. The agreement states that Robert, as the resident, "is responsible for payment in full of all amounts due and owing to the Facility." Cora signed the agreement as the "Responsible Party," which according to the agreement means that she "is liable for services rendered to the Resident by the Facility to the extent of the Resident's income, assets or resources to which the Responsible Party has legal access." The agreement further states, "Nothing in this agreement shall be construed to require that a Responsible Party is in any way personally liable for payment for services rendered by the Facility to the Resident."

{¶ 10} On November 25, 2014—six months and three days after Robert's death—Embassy sent a notice to Cora that it was seeking payment from Robert's estate for an outstanding balance of $1,678. Embassy mailed the notice to "The Estate of: Robert Bell, c/o Cora Bell, Fiduciary," and directed the correspondence to the "Personal Representative of the Estate." The body of the letter stated:

> You are not personally liable for the account. We are seeking payment from the assets of the decedent's estate. You are

4

not required to use your own assets or assets you owned jointly with the decedent to pay this debt.

{¶ 11} As of November 22, 2014, or six months after Robert's death, no estate had been opened for Robert, and Embassy did not seek to have an estate administrator appointed for the purpose of presenting a claim for unpaid services to Robert's estate.

{¶ 12} On June 29, 2015, Embassy filed a complaint in Franklin Municipal Court in Warren County, Ohio, naming Cora as the defendant and seeking payment from Cora for Robert's unpaid expenses under R.C. 3103.03(C).

{¶ 13} Cora moved for summary judgment, arguing that Embassy could not prove one of the elements of its claim under R.C. 3103.03 and that the six-month statute of limitations in R.C. 2117.06 for presenting claims to a decedent's estate barred Embassy's claim. The magistrate's decision granted summary judgment in favor of Cora based on the first argument: that Embassy had failed to offer any evidence that Robert or any estate left by Robert could not pay for Embassy's services, a prerequisite for a R.C. 3103.03 claim.

{¶ 14} The trial court overruled Embassy's objections to the magistrate's decision and granted summary judgment in favor of Cora, but for a different reason. The court concluded that Robert's debt to Embassy became a debt of his estate by operation of law and that Cora was not jointly and severally liable for her husband's obligation. Embassy was therefore required to seek payment from the estate under R.C. 2117.06 before pursuing its claim against Cora under R.C. 3103.03. And because Embassy failed to present its claim to the estate within the six-month limitations period in R.C. 2117.06, Embassy's claim was time-barred.

{¶ 15} A divided panel of the Twelfth District reversed, holding that R.C. 3103.03 creates a claim against a debtor's spouse that can be pursued independently from a claim against the estate under R.C. 2117.06. The court then noted that Cora,

as the party moving for summary judgment, did not affirmatively establish that Robert had had adequate Medicare insurance coverage to pay for Embassy's services. The court concluded that a genuine issue of material fact remained as to whether Robert had been able to support himself, an element of Embassy's claim under R.C. 3103.03.

{¶ 16} We accepted Cora's discretionary appeal, 151 Ohio St.3d 1502, 2018-Ohio-365, 90 N.E.3d 945, which presents two propositions of law:

> (1) The plain language of R.C. 2117.06(C) mandates a claim under R.C. 3103.03 for necessaries supplied to a decedent must be presented to the estate and failure to do so bars the claim against both the estate and the spouse.

> (2) By definition, a creditor who fails to timely present its claim to the decedent's estate cannot prove, as a matter of law, the decedent is unable to pay the claim such that a claim cannot be brought against the spouse.

**Analysis**

{¶ 17} The Twelfth District concluded that Embassy could pursue its claim for Robert's unpaid nursing-facility expenses against Cora individually under R.C. 3103.03 and was not required to present its claim first to Robert's estate under R.C. 2117.06. We conclude that the Twelfth District's holding contradicts the plain statutory language.

*R.C. 3103.03 imposes primary liability on each married person*
*for his or her own debts*

{¶ 18} We begin with the plain language of R.C. 3103.03. Under that statute, Robert, as the debtor spouse, retains primary liability for his unpaid debt to

6

Embassy. Embassy must therefore first seek satisfaction of its claim from Robert's income and assets.

**{¶ 19}** The first sentence of R.C. 3103.03(A) expressly provides that "[e]ach married person must support the person's self and spouse out of the person's property or by the person's labor." The next sentence provides that "[*i*]*f* a married person is unable to" support himself or herself, "the spouse of the married person must assist in the support *so far as the spouse is able*." (Emphasis added.) In other words, each married person retains primary responsibility for supporting himself or herself from his or her own income or property. The nondebtor spouse becomes liable only if the debtor spouse does not have the assets to pay for his or her necessaries. A creditor must therefore first seek satisfaction of its claim from the assets of the spouse who incurred the debt. R.C. 3103.03 does not impose joint liability on a married person for the debts of his or her spouse.

**{¶ 20}** Our conclusion is consistent with previous decisions in which we construed a former version of R.C. 3103.03 as imposing liability on the nondebtor spouse only if the debtor spouse cannot support himself or herself. For example, in *Ohio State Univ. Hosp. v. Kinkaid,* 48 Ohio St.3d 78, 549 N.E.2d 517 (1990), we stated: "*Where a husband is unable to provide for his own support*, pursuant to R.C. 3103.03 a wife must aid in the support of her husband to the extent that she is able." (Emphasis added.) *Id*. at 80.

**{¶ 21}** We then concluded that the decedent's wife was liable under R.C. 3103.03 for the medical expenses that her husband incurred before his death. *Id*. But unlike this case, there was a judicial finding in *Kincaid* that the decedent left no assets subject to probate, since all of the decedent's assets were held jointly with his wife with right of survivorship. *Id*. at 78; 10th Dist. Franklin No. 88AP-261, 1988 WL 81819, *3 (Aug. 2, 1988). Because the decedent's own assets were insufficient to pay his medical expenses at the time of his death, we concluded that

his wife was liable under R.C. 3103.03, subject to the trial court's determination of her ability to pay. *Id*. at 80.

**{¶ 22}** Prior to *Kincaid*, we concluded that G.C. Section 7997, the predecessor to R.C. 3103.03, imposed primary liability on the debtor spouse, while a nondebtor spouse's obligation is "in the nature of a secondary or suretyship liability." *Hausser v. Ebinger*, 161 Ohio St. 192, 195, 118 N.E.2d 522 (1954).

**{¶ 23}** Courts in other jurisdictions have reached similar conclusions regarding the doctrine of necessaries. *See Hickory Creek at Connersville v. Estate of Combs*, 992 N.E.2d 209, 210, 212 (Ind.Ct.App.2013) (the doctrine of necessaries holds "each spouse * * * primarily liable for his or her independent debts"). A creditor must first seek satisfaction from the income and property of the debtor spouse, "[a]nd only if those resources are insufficient may a creditor seek satisfaction from the non-contracting spouse." *Id*. at 213, citing *Bartrom v. Adjustment Bur., Inc*., 618 N.E.2d 1, 8 (Ind.1993). *See also Jersey Shore Med. Ctr.—Fitkin Hosp. v. Baum's Estate*, 84 N.J. 137, 141, 417 A.2d 1003 (1980) ("a judgment creditor must first seek satisfaction from the income and other property of the spouse who incurred the debt"); *Cheshire Med. Ctr. v. Holbrook*, 140 N.H. 187, 190, 663 A.2d 1344 (1995) (provider of necessaries must first seek payment from the spouse who received goods or services before pursuing collection from the other spouse).

**{¶ 24}** As alleged in Embassy's complaint, its claim for payment arises from its admission agreement with Robert. And that agreement bound Robert as the payor: "Resident is responsible for payment in full of all amounts due and owing to the Facility." Although Cora signed the agreement as "Responsible Party," the agreement expressly states that the responsible party is not "in any way personally liable for payment for services rendered by the Facility to the Resident."

**{¶ 25}** R.C. 3103.03(A) and the admission agreement leave no question that Robert was the debtor and that his estate remains primarily responsible for his

liabilities. Embassy was therefore required to seek recourse first against Robert's estate before seeking payment from Cora.

*The presentment requirements in R.C. 2117.06*

*apply to Embassy's claim*

**{¶ 26}** Having concluded that Robert retained primary liability for his unpaid debt with Embassy, we now consider the statutory mechanism that Embassy must use to collect on that debt. In order to prevail on a necessaries claim, Embassy concedes, it must show that Robert, as the debtor spouse, was unable to pay for the necessaries that Embassy provided to him. Embassy argues, however, that it can make that showing in an action under R.C. 3103.03 without first presenting a claim against the decedent's estate. It need not present its claim against Robert's estate under R.C. 2117.06, Embassy contends, because R.C. 3103.03 provides a separate and independent cause of action against a debtor's spouse.

**{¶ 27}** Embassy's argument, however, contradicts the plain language of R.C. 2117.06. Embassy's demand for payment falls squarely within the type of claims that must be presented to a decedent's estate under R.C. 2117.06.

**{¶ 28}** R.C. 2117.06(A) states that "[a]ll *creditors* having *claims* against an estate, including claims arising out of contract, * * * shall present their claims" in accordance with R.C. 2117.06. (Emphasis added.) The statute does not define the terms "creditor" and "claims." But we have held that the word "creditor" in R.C. 2117.06 means "all persons having rights in action against the decedent." *Pierce v. Johnson*, 136 Ohio St. 95, 99-100, 23 N.E.2d 993 (1939) (construing predecessor statute to R.C. 2117.06). *See also Raber v. Seiberling*, 9th Dist. Wayne No. 1710, 1981 WL 4027, at * 1 (June 17, 1981) (citing *Pierce* and concluding that plaintiff seeking specific performance on a land-sale contract was a "creditor" who must present his claim within the statutory deadline in R.C. 2117.06). We have also held that the presentment requirements in R.C. 2117.06 apply to "claims which may be

allowed as debts payable out of the assets of an estate." *Lewis v. Steinreich*, 73 Ohio St.3d 299, 302, 652 N.E.2d 981 (1995).

**{¶ 29}** As we stated earlier, Embassy's claim arose from its contract with Robert. Upon his death, Robert's contractual obligations became the obligations of his estate. *See Osborne v. Osborne*, 114 Ohio App.3d 412, 414, 683 N.E.2d 365 (2d Dist.1996) ("Obligations incurred by a deceased during his or her lifetime become debts of his or her estate after death by operation of law"). *Accord D'Amore v. Mathews*, 193 Ohio App.3d 575, 2011-Ohio-2853, 952 N.E.2d 1212, ¶ 19 (12th Dist.). As a creditor with a contractual claim against Robert, Embassy should have presented its claim to Robert's estate in accordance with R.C. 2117.06.

**{¶ 30}** In fact, Embassy's November 25, 2014 correspondence acknowledged that Robert's estate, and not Cora, was liable for Robert's unpaid expenses. Embassy mailed the correspondence to "The Estate of: Robert Bell" in care of Cora as the presumed fiduciary and addressed the salutation to the "Personal Representative of the Estate." In the body of the letter, Embassy stated that it was "seeking payment from the assets of the decedent's estate" and that Cora "[was] not personally liable for the account."

**{¶ 31}** Unfortunately for Embassy, the six-month deadline to present its claim to Robert's estate expired three days earlier, on November 22, 2014. By that date no estate had been opened for Robert, and Embassy could have but did not seek appointment of an estate administrator. "[I]t is incumbent" upon a creditor with a claim against an estate to procure the appointment of an administrator under R.C. 2113.06(C) before the expiration of the six-month period. *Wrinkle v. Trabert*, 174 Ohio St. 233, 237, 188 N.E.2d 587 (1963). If a creditor fails—through indifference, delay, or lack of diligence—to procure the appointment of an administrator, "the law should not come to the creditor's aid." *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 17. Because Embassy sat on its rights, its claim arising from Robert's obligations under the admission

agreement is forever barred "as to all parties," including Cora. *See* R.C. 2117.06(C).

{¶ 32} The dissent contends that R.C. 2117.06 does not apply to Embassy. The statute, however, pertains to "creditors having claims against an estate," not just to creditors who actually seek payment from an estate. R.C. 2117.06(A). *See also Pierce*, 136 Ohio St. at 99-100, 23 N.E.2d 993 ("creditor" means "all persons having rights in action against the decedent"). A creditor with an enforceable claim against a decedent cannot opt out of the requirements of R.C. 2117.06. That person is a "creditor" with a "claim" that must be presented timely to the estate.

{¶ 33} The dissent also suggests various scenarios that involve creditors other than those seeking payment for providing necessaries, and it argues that our holding will affect creditors in those situations. Our holding, however, addresses only the statutory language and factual situation before us in this appeal. Here, we have a necessaries creditor with a contractual claim against a decedent—a claim that became the obligation of the estate upon the decedent's death. Our holding goes no further than to address these circumstances.

## Conclusion

{¶ 34} We conclude that Embassy was required to present its claim for unpaid necessaries to the decedent's estate under R.C. 2117.06 before it could pursue a claim individually against the surviving spouse under R.C. 3103.03. Because Embassy failed to present its claim to the decedent's estate or seek the appointment of an administrator within six months of the decedent's death, Bell was entitled to summary judgment. We therefore reverse the Twelfth District's judgment.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, and DEGENARO, JJ., concur.

FISCHER, J., dissents.

DEWINE, J., dissents, with an opinion.

_____

**DEWINE, J., dissenting.**

**{¶ 35}** The majority today reimagines Ohio's necessaries statute, R.C. 3103.03, to mandate that a claim for necessaries must first be presented to a decedent's estate. Along the way, the majority announces a broad new rule that subjects not only claims under R.C. 3103.03 but other creditor claims to estate-law requirements. None of this is justifiable as a matter of statutory construction.

**{¶ 36}** Almost lost in the majority opinion is that resolution of this case simply requires the construction of two lines of statutory text. The necessaries statute provides that if a married person who is able to do so fails to support her spouse, "any other person * * * may supply the spouse with necessaries * * * and recover the reasonable value of the necessaries supplied from the married person who neglected to support the spouse." R.C. 3103.03(C). The other statute cited by the majority establishes the procedure for the presentment of "claims against an estate," R.C. 2117.06. Because the necessaries statute permits a claim to be made directly against the married person who failed to provide necessaries, the statute of limitations set forth in R.C. 2117.06 for "claims against an estate" has no application. It is that simple.

**{¶ 37}** It is true that before recovering payment from Cora, Embassy must show that Robert himself was unable to pay. R.C. 3103.03(A). And of course, showing that a claim against the estate was not satisfied is one way to show that a spouse was unable to pay for his own support. But nothing in R.C. 3103.03 prescribes how an inability to pay must be established. Indeed, a party could likely comply with the requirement simply by submitting records establishing that a person died with no assets.

**{¶ 38}** Instead of looking to the plain language, the majority grafts R.C. 2117.06's requirements onto the necessaries statute and says that Embassy had to first present its claim against Cora to Robert's estate. Because a claim wasn't

presented against the estate within the six-month time limit provided by R.C. 2117.06(B), the majority concludes that Embassy was not permitted to seek payment under R.C. 3103.03—a statute that until today set forth an entirely separate action.

{¶ 39} According to the majority's new rule, when an estate has not been opened, a creditor who wishes to pursue a necessaries claim must undertake the burden of having an estate opened under R.C. 2113.06, even when the decedent left no assets and when the opening of an estate is an obviously futile exercise. Take for example a no-asset decedent, a rich surviving spouse, and an in-home nurse who is owed a substantial amount for care rendered to the decedent. The necessaries statute says the nurse has a right to be compensated by the surviving spouse. But under today's ruling, before pursuing a claim against the spouse, the nurse must undertake the vain act (and the expense) of opening an estate for the decedent and filing a claim against the estate. Only when the claim is denied may the nurse pursue a claim under the necessaries statute. What a waste of time and money.

{¶ 40} The majority gets to its new rule through a novel construction of R.C. 2117.06. In the penultimate paragraph of its opinion, the majority makes the sweeping pronouncement that the presentment requirement of R.C. 2117.06 applies to all

> "creditors having claims against an estate," not just to creditors who actually seek payment from an estate. * * * A creditor with an enforceable claim against a decedent cannot opt out of the requirements of R.C. 2117.06. That person is a "creditor" with a "claim" that must be presented timely to the estate.

Majority opinion at ¶ 32, quoting R.C. 2117.06. In other words, under the majority's reading of the statute, presentment of a claim to the estate is mandatory,

not only to recover from the estate but to pursue that claim at all. If a creditor has a potential claim against a decedent and does not present the claim to the estate, the creditor is permanently barred from pursuing the claim against another party who is also liable.

{¶ 41} In reaching this result, the majority reads the phrase "[a]ll creditors having claims against an estate" out of context. R.C. 2117.06(A) sets forth procedures for creditors to present a claim against the estate: "All creditors having claims against an estate * * * shall present their claims in one of the following manners." The remainder of R.C. 2117.06 establishes a limitation period for presentment of claims and delineates rules concerning the allowance and disallowance of claims that have been presented. Read in context, the phrase "[a]ll creditors having claims against an estate" simply makes clear that R.C. 2117.06 is the sole avenue for a creditor to pursue a claim against an estate. Nothing in R.C. 2117.06 mandates that a creditor who potentially has a claim against an estate must present that claim or forgo another independent source of recovery.

{¶ 42} The majority's misreading of the statutory scheme is put into sharp focus when one considers the implications for cases that go beyond necessaries. Imagine a tort action in which a decedent and another person are jointly and severally liable for injuries to a plaintiff. Under the majority's rendering of R.C. 2117.06, all creditors having claims against the estate are bound to present them to the estate. So the injured person would be compelled to file a claim against the decedent's estate—and if necessary, to open an estate—before he could pursue a claim against the second tortfeasor. Likewise, a creditor of a partnership, in which one partner has died, would have to present a claim against the deceased partner's estate before seeking payment from the other partner. The same goes for any creditor who wishes to collect on a debt that was jointly owed by a decedent and a living party.

**{¶ 43}** If the majority really means what it says—that the requirements of R.C. 2117.06 are mandatory and that a claim must first be presented against an estate even when a creditor has a legal right to pursue another avenue of recourse—it has worked a substantial rewrite of a large chunk of debtor-creditor law. The majority tap dances around the issue by explaining that its statutory reading applies only to this case. Left unexplained is why the statute should be read one way for this case and another way for a different case.

**{¶ 44}** This is the all more reason why we ought to stick to what the statutes in question actually say. Under a plain reading of its terms, R.C. 3103.03 does not require that a claim for necessaries always be first presented to a decedent's estate. Nor does R.C. 2117.06 mandate that in all cases, creditors seek payment from an estate. Because the majority holds differently, I respectfully dissent. I would affirm the judgment of the court of appeals.

———————————

Weltman, Weinberg & Reis Co., L.P.A., Daniel A. Friedlander, and Jeffrey Sobeck; Tucker Ellis, L.L.P., and Susan M. Audey, for appellee.

Pro Seniors, Inc., and Miriam H. Sheline, for appellant.

Cathlene Beck and Scott E. Torguson, urging reversal for amicus curiae the Legal Aid Society of Columbus.

Rebecca Steinhauser and Heather Hall, urging reversal for amicus curiae Advocates for Basic Legal Equality, Inc.

Katherine B. Hollingsworth and Thomas Mlakar, urging reversal for amicus curiae the Legal Aid Society of Cleveland.

Andrew D. Neuhauser and Michael F. Harrington, urging reversal for amicus curiae Southeastern Ohio Legal Services.

John M. Petit, urging reversal for amicus curiae Community Legal Aid Services.

Murray & Murray Co., L.P.A., and Margaret M. Murray, urging reversal for amicus curiae the Ohio Association for Justice.

_____