[Cite as *In re Estate of Seiler*, 2021-Ohio-115.]

STATE OF OHIO          )
                       )ss:
COUNTY OF SUMMIT       )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN THE MATTER OF THE ESTATE OF
BRENAN JOSEPH SEILER

C.A. No.     29756

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2019 ES 476

DECISION AND JOURNAL ENTRY

Dated: January 20, 2021

SCHAFER, Judge.

{¶1} Western Reserve Hospital, LLC and Western Reserve Hospital's Employee Medical Benefit Plan (collectively "Western Reserve"), appeal the decision of the Summit County Court of Common Pleas, Probate Division. For the reasons that follow, this Court reverses.

I.

{¶2} This appeal arises from an unpaid medical bill that has spawned litigation in both state and federal court. Appellant, Western Reserve, denied coverage for services provided to decedent, Brenan Seiler, during his last illness. Appellee, Summa Health Systems, Inc. ("Summa"), then opened the Estate of Brenan Seiler ("the Estate") and, after being appointed administrator of the Estate, Summa presented its own creditor claim for the medical bill as a contingent claim against the Estate. Summa, in its individual capacity and as administrator of the Estate, filed a complaint in the United States District Court asserting Employee Retirement Income Security Act ("ERISA") claims against Western Reserve. The commencement of the federal suit

prompted Western Reserve to intervene in the probate proceedings to object to Summa's creditor claim.

{¶3}    The facts underlying the appeal began on May 12, 2018, when Mr. Seiler presented to Summa's emergency room for treatment due to an accidental drug and alcohol overdose. Mr. Seiler remained hospitalized and received care from Summa until he died as a result of his condition several days later, on May 18, 2018.

{¶4}    Mr. Seiler was an insured, or covered individual, under a health benefit plan through Western Reserve (the "Plan"). As a covered individual, Mr. Seiler was eligible to receive health care benefits for covered services under the Plan. "Covered services" are defined as medically necessary health services as determined by the Plan. Summa is party to a "facility agreement" with the Plan. This facility agreement defines and governs certain aspects of Summa's rights and responsibilities regarding claims for payment of covered services for individuals covered by, or insured through, the Plan.

{¶5}    "On or about September 12, 2018," Summa submitted a request for "payment in the amount of $341,339.50 from the Plan for the treatment Summa had provided" to Mr. Seiler between May 12-18, 2018. On October 15, 2018, Western Reserve issued an "Adverse Determination Notice" to Summa, denying Summa's claim for payment. According to Summa,[1] the adverse determination notice stated as the basis for its denial that Mr. Seiler's emergency department visit and hospitalization were the result of illegal activity, to wit: Mr. Seiler's substance abuse, which included illicit drug use and significantly contributed to his cardiac arrest.

---

[1] Neither the adverse determination letter, nor the actual language of that letter appears in the record.

{¶6} Summa asserted that the adverse determination notice informed Summa of its "right to a second-level appeal and invited Summa to perfect such an appeal * * *." Summa also cited to the facility agreement as the source of an appeals process Summa was required to follow. Regarding appeals and adjustment requests, the facility agreement states:

> If [Summa] believes a Claim has been improperly adjudicated for a Covered Service, for which [Summa] timely submitted a Claim to Plan, [Summa] must submit a written request for an appeal or adjustment with Plan within two (2) years from the date of Plan's payment or explanation of payment. The request must be submitted in accordance with Plan's payment appeal process. Request for appeals or adjustments submitted after this date may be denied for payment, and [Summa] will not be permitted to bill [the Plan] or the Covered Individual for those services for which payment was denied.

The facility agreement does not include an explanation or description of the Plan's payment appeal process.

{¶7} Summa submitted verbal and written appeals of the adverse determination to Western Reserve on or about December 14, 2018, February 4, 2019, and March 14, 2019. In the federal complaint, Summa asserted that the "Plan provides that post-service appeals must receive a written determination within 30 calendar days after receipt of the appeal request." However, Summa alleged, the Plan "did not respond to Summa's verbal and written second-level appeal requests."

{¶8} On April 15, 2019, Summa sent a letter to Western Reserve requesting federal external review, asserting Western Reserve failed to engage in the claims appeal process. The Plan's appeals coordinator issued a letter on April 22, 2019, responding to Summa's request for an external review. The Plan denied Summa's request, stating that the denial of the claim was ineligible for external review both under the Plan and under the law. The letter also stated Summa was "not entitled to use the external review appeal process to adjudicate its claim for payment because it [was] not a covered person or the authorized representative of Plan participant."

**{¶9}** Summa mailed a statement addressed to Mr. Seiler on May 16, 2019, requesting payment in the amount of $341,339.50. On May 23, 2019, Summa opened the Estate as a creditor of the Estate. The probate court granted Summa's application and appointed Summa administrator of the Estate.

**{¶10}** Summa presented its creditor claim against the Estate on June 14, 2019. Summa alleged that the Estate is indebted in the amount of $341,339.50 for medical services provided to Mr. Seiler, which had recently become his financial obligation. Summa acknowledged the six-month window that generally applies to creditor claims but asserted that its claim did not accrue until the end of its appeals process on April 23, 2019. Summa moved the probate court—and itself as the administrator—to allow its claim as a timely contingent claim.

**{¶11}** Summa filed the federal complaint asserting ERISA claims against Western Reserve on June 27, 2019. Meanwhile, Western Reserve appeared and filed an objection to Summa's creditor claim in the probate court. Western Reserve challenged Summa's contention that the claim was contingent and argued, inter alia, the claim was time-barred and Summa was not a creditor of the Estate. The federal district court stayed the matter pending the probate court's ruling on the objection to Summa's creditor claim because the ruling would be central to the issue in the federal case: "whether Summa may bring an ERISA claim in [federal court] as Administrator of the Estate."

**{¶12}** Summa and Western Reserve briefed the issues for the probate court and submitted the matter to a magistrate for decision. The magistrate found that Summa's claim did not accrue until the Plan made its final decision that it would not cover the cost of services Summa provided to Mr. Seiler. The magistrate concluded that Summa's claim was "merely contingent" and not "ripe for presentment" to the Estate until Western Reserve's ultimate denial of payment. The

magistrate interpreted the Plan's April 23, 2019[2] letter informing Summa it was ineligible for federal external review as the Plan's "final decision to deny the payment of medical bills that were incurred for [Mr. Seiler's] care." Consequently, the magistrate concluded this "final" or "ultimate" denial occurred at the culmination of an "administrative process" or an "administrative appeals process on April 23, 2019." The magistrate deemed April 23, 2019, the date Summa's claim accrued and became ripe for presentment.

{¶13} Western Reserve objected to the magistrate's decision, contending that Summa's claim was not contingent because it accrued when medical services were rendered to Mr. Seiler, the facility agreement had no impact on Summa's statutory obligations to comply with Ohio law, and the decision was based on an improper public policy argument. The probate court overruled Western Reserve's objections and issued its judgment affirming and adopting the magistrate's decision. The trial court held: "Summa's claim for medical expenses was contingent on how much, if any, [Western Reserve] would cover. The final decision by [Western Reserve], some time in the making, marks the time for the claim to move from contingent to settled and thus, establishes the moment of accrual of the claim. Therefore, the claim and the filing fall within the statute of limitations under R.C. 2117.37." The probate court entered judgment allowing Summa's claim as a creditor.

{¶14} Western Reserve timely appealed the trial court's decision and has raised one assignment of error for our review.

---

[2] Throughout the record, reference is made to the "April 23" letter. This letter is actually dated April 22, 2019, but it appears to have been faxed to Summa on April 23, 2019. For the sake of consistency, we will use April 23, 2019 when referring to the letter.

II.

## Assignment of Error

**The trial court erred by classifying Summa's creditor's claim as a "contingent claim" under [R.C.] 2117.37 based on the court's conclusion that the hospital could not present its claim against its patient until learning whether health insurance would pay any of the patient's liability.**

{¶15} In its sole assignment of error, Western Reserve argues the probate court erred by interpreting R.C. 2117.37 to conclude that a hospital's uncertainty as to whether health insurance would cover payment for medical services provided to an insured patient prevented the accrual of the claim, rendered the hospital's claim contingent, and provided an exception to the requirements of R.C. 2117.06 for the presentment of a claim. Western Reserve argues Summa's claim against the Estate was a "presentable unmatured claim" under R.C. 2117.06, and not a "contingent claim" under R.C. 2117.37. Western Reserve also contends, "[a]s a matter of law, for purposes of the presentment statutes, a hospital's cause of action for payment for medical services provided to a deceased patient arises and accrues when the services are rendered. The accrual of the hospital's cause of action against its patient is entirely unrelated to a third-party insurer's later decision whether to pay for the services."

{¶16} This Court generally reviews a trial court's action regarding a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. This Court applies a de novo standard of review to an appeal from a trial court's interpretation and application of a statute. *In re Piesciuk*, 9th Dist. Summit No. 26274, 2012-Ohio-2481, ¶ 6. A de novo review requires an independent review of the decision of the trial court without deference to

the trial court's determination. *Id.*, quoting *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶17} R.C. 2117.06 dictates the procedure for the presentation and allowance of creditor claims. The statute provides in pertinent part that "[a]ll creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated, shall present their claims * * *" in writing to the executor or administrator of an estate, "[a]fter the appointment of an executor or administrator and prior to the filing of a final account or a certificate of termination * * *." R.C. 2117.06(A)(1)(a). Regarding the time for presenting a claim to an estate, R.C. 2117.06(B) specifies "all claims shall be presented within six months after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that six-month period." A "claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties," and "[n]o payment shall be made on the claim and no action shall be maintained on the claim, except as otherwise provided in [R.C. 2117.37 to 2117.42] with reference to contingent claims." R.C. 2117.06(C).

{¶18} There is no dispute that Summa did not satisfy R.C. 2117.06(A)(1). The issue here is whether Summa's claim—presented beyond the expiration of the statutorily prescribed six months after the death of Mr. Seiler—met an exception to R.C. 2117.06 for the presentation of contingent claims. If, at the time of a decedent's death, a claim is contingent, but "a cause of action subsequently accrues on the claim, it shall be presented to the executor or administrator, in the same manner as other claims, before the expiration of six months after the date of death of the decedent, or before the expiration of two months after the cause of action accrues, whichever is later * * *." R.C. 2117.37.

{¶19} A contingent claim is one where liability depends on a future event which may or may not occur; it is the "element of dependency upon an uncertainty which renders a claim contingent." *Pierce v. Johnson*, 136 Ohio St. 95, 98-100, (1939) (concluding that an unliquidated claim for damages arising out of tort does not fall within the exception for contingent claims). A "contingent debt is one in which there is a triggering event or some condition precedent for the debt to exist." *In re Estate of Jarriett v. Parkview Fed. Sav. Bank*, 8th Dist. Cuyahoga No. 93289, 2010-Ohio-1434, ¶ 20

{¶20} "A contingent claim must not be confused with an unmatured claim." *Keifer v. Kissell*, 83 Ohio App. 133, 137 (2d Dist.1947). An unmatured claim, which must be presented whether due or not due, "is one where the liability is certain but the maturity or due date has not arrived; whereas, a contingent claim is one where the liability depends upon some indefinite or uncertain future event which may never happen and liability may never arise." *Id*. (discussing the 1941 amendments to the Probate Code, G.C. 10509-112, distinguishing between unmatured and contingent claims).

{¶21} Generally, medical bills and expenses related to a decedent's last sickness must be presented to an estate pursuant to the statutory requirement within six months of the decedent's death. *In re Estate of Greer*, 197 Ohio App.3d 542, 2011-Ohio-6721, ¶ 7-9 (1st Dist.); *see also Embassy Healthcare v. Bell*, 155 Ohio St.3d 430, 2018-Ohio-4912, ¶ 29 (creditor with a contractual claim to payment for services rendered to decedent must present its claim to an estate in accordance with R.C. 2117.06).

{¶22} Here, the probate court concluded the "amount" of Summa's claim was contingent until it was finally settled as to the amount the insurance would pay, if anything, and therefore uncertain until Western Reserve made its final decision. The probate court accepted Summa's

assertion that Western Reserve made its "final determination denying the claim" at the "conclusion of the appeal process" on April 23, 2019. Referring to the facility agreement, the court stated that "Summa could not know the amount of the claim until the final determination to pay or deny the claims by [Western Reserve] under this contractual provision." Further, the probate court purported to weigh the public policy in favor of timely presentation of claims and administration of estates embodied in R.C. 2117.06 against the legislative intent behind another statute the court deemed relevant, R.C. 1751.60. R.C. 1751.60(A) states that a "health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles." R.C. 1751.60(D) clarifies that nothing in the statute "shall be construed as preventing a provider or health care facility from billing the enrollee or subscriber of a health insuring corporation for noncovered services." In its analysis, the probate court noted that R.C. 1751.60 reinforces that the legislature intended for the system to work as it did here, with a provider seeking payment through the health insurer first and pursuing claims against the estate once payment is denied.

{¶23} Western Reserve argues the presence of a contingent event, "such as the question of who may pay a decedent's existing liability," will not necessarily render the underlying claim "contingent" withing the meaning of R.C. 2117.37. Western Reserve contends this debt existed, and the cause of action accrued, as soon as Summa provided services to Mr. Seiler, and any argument to the contrary would confuse liability with a creditor's ability to collect on a debt. Consequently, Western Reserve argues the probate court erred in its conclusion that Summa's

claim remained contingent until its cause of action accrued at the conclusion of the Plan's appeal process on April 23, 2019.

{¶24} Summa maintains that the issue of coverage created the future uncertainty that made its claim contingent. Summa contends the probate court correctly determined that the claim did not accrue, and Summa could not present a claim against the Estate, until the contingency was resolved when the Plan made its final adverse determination. Summa asserts the probate court correctly concluded that the April 23, 2019 letter from Western Reserve was the relevant uncertain event.

{¶25} Contrary to the probate court's finding, there is no indication that the "amount" of the of the debt was ever uncertain. As of September 12, 2018, the amount Summa claimed due for medical services totaled $341,339.50. That amount remained unchanged. The only uncertainty was what portion of that amount Mr. Seiler, as a covered individual, would ultimately be responsible for paying out of pocket. Resolution of this uncertainty rested on a decision from Western Reserve as to whether some or all of the services provided to Mr. Seiler were covered services.

{¶26} Western Reserve sent notice on October 15, 2018, informing Summa of its decision to deny coverage for the services Summa provided to Mr. Seiler during his final illness. Assuming arguendo that Summa was statutorily or contractually prohibited from presenting its claim against the Estate until the Plan determined Summa's services were not covered services, Summa had notice as of October 15, 2018, that Western Reserve had deemed these noncovered services. There is no legal authority or evidence in the record to support the conclusion of the probate court that Summa was prohibited from presenting its claim to the Estate after it received Western Reserve's adverse determination notice.

{¶27}   Summa failed to support its contention that it was bound to exhaust any contractual appeal or review requirements prior to presenting its claim to the Estate.  The appeal process is not clearly identified, explained, or evidenced in the record.  Nor is there evidence in the record to substantiate Summa's contention that the April 23, 2019 letter was, in fact, Western Reserve's final decision denying the claim and concluding this appeals process.  This letter informed Summa that the denial in this case was not eligible for external review because it was not the type of denial contemplated by the Plan or the relevant federal regulation, 29 C.F.R. 2950.715-2719(d).  Furthermore, the letter stated that Summa was "not entitled to use the external review appeal process to adjudicate its claim for payment because it [was] not a covered person or the authorized representative of a Plan participant."

{¶28}   There is no support for the probate court's conclusion that Summa was required to follow an appeal process before presenting its claim to the Estate, nor for the court's conclusion that this uncorroborated appeals process concluded with the April 23, 2019 letter rejecting Summa's request for external review.  Moreover, there is no authority to support the probate court's conclusion that a private health care facility's pursuit of an internal appeals process with a private health insurer could, in any event, toll the time for presenting a claim under R.C. 2117.06.  Therefore, we conclude the probate court erred by concluding that Summa's claim accrued when it received the April 23, 2019 letter from Western Reserve, rather than the October 15, 2018, adverse determination notice denying coverage.

{¶29}   Still, the question remains as to whether the uncertainty of coverage under the Plan rendered Summa's claim contingent or, as Western Reserve argues, unmatured—but noncontingent—and ripe for presentment under R.C. 2117.06.  There are a variety of factors potentially impacting liability for medical expenses incurred in a decedent's last illness.  Upon the

limited facts in the record before us, and because such a decision is of no consequence in this particular case, we decline to further consider whether Summa could have presented its claim at the time services were rendered. Regardless of whether the claim was a noncontingent claim or a contingent claim that accrued on October 15, 2018, when Summa received Western Reserve's adverse determination notice that the services were not covered, Summa failed to timely present the claim.

{¶30} R.C. 2117.37 requires that a claim be presented "before the expiration of six months after the date of death of the decedent, or before the expiration of two months after the cause of action accrues, whichever is later * * *." November 18, 2018 marks six months from the date of Mr. Seiler's death. Assuming without deciding that the cause of action arose on October 15, 2018, rather than at the time of his death, the expiration of two months after the cause of action accrued was December 15, 2018. Summa did not present its claim against the Estate until June 14, 2019, well beyond the time permitted by R.C. 2117.37.

{¶31} Even where there is no dispute that a claim is contingent, the claim is barred if not timely presented in accordance with R.C. 2117.37. *Pifer v. Raker*, 9th Dist. Medina No. 2010, 1991 WL 231312, *1-2 (Nov. 6, 1991) (time for presenting a contingent claim ran from the date of judgment and, because an appeal of that judgment could not toll the time for presentment, the claim presented after the expiration of time under R.C. 2117.37 was barred); *Aiello v. Soranno*, 9th Dist. Summit No. 12068, 1985 WL 10853, *1 (Sept. 11, 1985) ("Whether the claim presented was a contingent or non-contingent claim is of no consequence in this situation because in either case the claim was presented in an untimely manner."). Thus, we conclude, the probate court erred by concluding that Summa's claim was a timely filed contingent claim under R.C. 2117.37.

{¶32} Western Reserve's sole assignment of error is sustained.

III.

{¶33} Western Reserve's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Probate Division, is reversed, and the matter is remanded for proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.


JULIE A. SCHAFER
FOR THE COURT



CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JOHN F. HILL and MELEAH M. KINLOW, Attorneys at Law, for Appellant.

JOHNATHAN T. BROLLIER, Attorney at Law, for Appellee.