[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of B.I.,* Slip Opinion No. 2019-Ohio-2450.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2450

IN RE ADOPTION OF B.I.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of B.I.,* Slip Opinion No. 2019-Ohio-2450.]

*Adoption—R.C. 3107.07(A)—A parent's nonsupport of his minor child pursuant to a judicial decree ordering zero support does not extinguish the requirement of that parent's consent to the adoption of the child—Appellee-father did not "fail[] without justifiable cause * * * to provide for the maintenance and support of the minor as required by law or judicial decree" under R.C. 3107.07(A)—Court of appeals' judgment affirming probate court's judgment affirmed.*

(Nos. 2018-0181, 2018-0182, 2018-0350, and 2018-0351—Submitted January 8, 2019—Decided June 25, 2019.)

APPEAL from and CERTIFIED by the Court of Appeals for Hamilton County, Nos. C-170064 and C-170080, 2017-Ohio-9116.

_____

**KENNEDY, J.**

**{¶ 1}** This is a discretionary appeal and certified-conflict case from the First District Court of Appeals involving R.C. 3107.07(A), the statute that sets forth when the adoption of a minor may proceed without a parent's consent. Pursuant to that statute, a parent's consent is not required when the court "finds by clear and convincing evidence that the parent has failed without justifiable cause to provide * * * for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition." In this case, we consider the effect on the operation of that statute of a judicial decree relieving a parent of an obligation to provide child support—is a parent susceptible to the severance of his or her parental rights for failing to provide maintenance and support for at least one year when a court has issued a decree relieving the parent of any obligation to pay child support? We hold that pursuant to the plain and unambiguous language of R.C. 3107.07(A), when read in conjunction with the statutory scheme instructing how a court of competent jurisdiction calculates a child-support obligation, a parent's nonsupport of his or her minor child pursuant to a judicial decree does not extinguish the requirement of that parent's consent to the adoption of the child.

## FACTS AND PROCEDURAL HISTORY

**{¶ 2}** K.I. ("the mother") and appellee, G.B. ("the father"), are the natural parents of B.I., who was born in 2007. The mother and father were never married. In 2016, the mother's husband, appellant, G.I. ("the stepfather"), filed in the Hamilton County Probate Court a petition seeking to adopt B.I. and arguing that under R.C. 3107.07(A), the father's consent was not required. That statute provides that a natural parent's consent to adoption is not necessary if the probate court determines

by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition.

R.C. 3107.07(A).

{¶ 3} The stepfather argues that the father had failed to provide support for B.I. during the year preceding the filing of the petition; he abandoned his claim that the father had failed to provide more than de minimis contact in that period (failure to maintain contact had been the basis for a failed attempt by the stepfather to adopt B.I. in the Clermont County Probate Court in 2014).

{¶ 4} The father entered prison in 2009 and remained there for the relevant time period. In 2010, the mother requested the Clermont County Juvenile Court to terminate the father's child-support obligation and to reduce his arrearages to zero. The court issued an order stating as follows: "It is hereby ordered * * * that the Defendant's current support obligation is terminated at the request of Plaintiff. At Plaintiff's request, the outstanding support arrearage is reduced to $0.00. CSEA [Child Support Enforcement Agency] is hereby directed to adjust its records accordingly."

{¶ 5} During the one-year period prior to the filing of the petition for adoption, the father had received $18 a month as prison income and his parents and a friend had deposited $5,152 into his prison account; that year, the father spent $4,681.62 in the prison commissary. There is no dispute that the father provided no financial support to B.I. during that period.

{¶ 6} The probate-court magistrate determined that even though the father was not subject to a child-support order under a judicial decree, he still had money available and an obligation as a parent to provide child support within his means.

Finding that the father had provided no child support during the applicable year, the magistrate concluded that the father's consent to the adoption was not required. The probate court overruled the magistrate, finding that a valid, zero-support order provides justifiable cause for a failure to provide maintenance and support under R.C. 3107.07(A).

**{¶ 7}** The stepfather filed two appeals in the First District Court of Appeals, one upon the probate court's filing of its opinion granting the father's objections and overruling the magistrate's decision and the second upon the probate court's dismissal of the adoption petition. The appellate court consolidated the cases and affirmed the probate court's judgment, holding that "under R.C. 3107.07(A), where a court has ordered a parent to pay no child support or zero child support, that court order of support supersedes any other duty of support 'required by law,' and therefore the parent cannot fail without justifiable cause to provide maintenance and support of a minor child." 2017-Ohio-9116, 101 N.E.3d 1171, ¶ 19.

**{¶ 8}** The First District certified a conflict between its judgments and the judgments of the Fifth District Court of Appeals in *In re Adoption of A.S.*, 5th Dist. Licking No. 10-CA-140, 2011-Ohio-1505, and *In re Adoption of Z.A.*, 5th Dist. Licking No. 16-CA-05, 2016-Ohio-3159. This court determined that a conflict exists between the judgments below and the Fifth District's judgment in *A.S.* and ordered the parties to brief the following question:

"In an adoption-consent case under R.C. 3107.07(A) in which a court has previously relieved a parent of any child-support obligation, does that previous order supersede any other duty of maintenance and support so as to provide 'justifiable cause' for the parent's failure to provide maintenance and support, therefore requiring the petitioner to obtain the consent of that parent?"

152 Ohio St.3d 1441, 2018-Ohio-1600, 96 N.E.3d 297, quoting the court of appeals' February 27, 2018 entry.

{¶ 9} Additionally, the stepfather filed jurisdictional appeals that we accepted. The stepfather asserted the following two propositions of law in those cases:

> Proposition of Law No. I: An adoption consent case under R.C. 3107.07(A) must be decided on a case-by-case basis through the able exercise of the trial court's discretion. The trial court must give due consideration to all known factors in deciding whether a natural parent's consent is required under the statute.

> Proposition of Law No. II: In an adoption consent case under R.C. 3107.07(A), a court order setting the natural parent's child support obligation at zero does not justify the parent's failure to provide maintenance and support to his or her child as a matter of law. Instead, a trial court must exercise its discretion and weigh all of the circumstances around which a parent has failed to provide maintenance and support; and a so-called zero support order is just one factor (among many) that the court must consider.

*See* 152 Ohio St.3d 1441, 2018-Ohio-1600, 96 N.E.3d 297.

{¶ 10} We sua sponte consolidated the certified-conflict cases and the jurisdictional appeals. *Id.*

**LAW AND ANALYSIS**

{¶ 11} This case—and the statute at the center of this case—is not about child-support enforcement; it is about the severance of parental rights. At its core, this case raises a critical question: Can child-support obligors rely on the authority of court orders that affect the most important aspects of their lives? Can a parent

who relies on a valid order of a court of competent jurisdiction suffer—because he or she relied on that order—the " 'family law equivalent of the death penalty,' " *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991), the severing of parental rights through the adoption of the parent's child by another person without the parent's consent?

*The application of R.C. 3107.07(A)*

**{¶ 12}** This case turns on a phrase in R.C. 3107.07, and we must strictly construe the statute in favor the retention of parental rights. "Because adoption terminates fundamental rights of the natural parents, 'we have held that "* * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children." ' " (Ellipsis and brackets sic.) *In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, 933 N.E.2d 245, ¶ 6, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986), quoting *In re Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). "[I]n construing R.C. 3107.07(A), this court is 'properly obliged to strictly construe * * * [its] language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights.' " (Ellipsis and brackets sic.) *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 132, 585 N.E.2d 418 (1992), quoting *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 366, 481 N.E.2d 613 (1985).

**{¶ 13}** R.C. 3107.07 provides:

> Consent to adoption is not required of any of the following:
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact

6

with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 14} In this case, we do not face the question whether the father had de minimis contact with his child, B.I.; the stepfather's 2014 attempt to adopt on that basis in Clermont County failed, and the stepfather has abandoned that claim in this case. Here, we consider only whether the father "has failed without justifiable cause * * * to provide for the maintenance and support of the minor as required by law or judicial decree," R.C. 3107.07(A).

{¶ 15} To determine whether a parent has failed to provide child support as required by law or judicial decree involves a three-step analysis. The court must first determine what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. Second, the court determines whether during that year the parent complied with his or her obligation under the law or judicial decree. Third, if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure.

{¶ 16} We stand in this case at the first step—determining what the law or judicial decree required of the parent for the year prior to the filing of the petition. If the father had no obligation to provide child support, the analysis ends there. But appellate courts, as did the probate court in this case, have tended to consider the existence of a court order establishing no obligation of support as part of the justifiable-cause determination, *e.g.*, *In re Adoption of A.N.W.*, 7th Dist. Belmont No. 15 BE 0071, 2016-Ohio-463, ¶ 31 ("a zero support order or a no support order constitutes justifiable cause for failing to provide support and maintenance"); *In re*

*Adoption of K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 23 ("The zero support order is a justifiable excuse for [the father's] failing to pay support for his children"). Indeed, this court, in determining that a conflict exists among appellate districts, ordered briefing in this case on the issue whether a court order relieving a parent of a child-support obligation provides justifiable cause for the parent's failure to provide maintenance and support. But the issue is not whether a decree ordering zero support—or one that terminates a previously ordered support obligation or modifies a previously ordered support amount to zero—justifies a failure to provide maintenance and support; instead, the issue is whether the existence of a no-support order[1] means that the parent subject to it was under no obligation to provide maintenance and support. Determining the parent's obligation—that which was required by law or judicial decree for the year prior to the filing of the petition—is the threshold issue.

{¶ 17} Therefore, the crux of the issue before us is this: if a court has issued a decree relieving a parent of any child-support obligation, is there a separate obligation that arises by law under which that parent still is required to provide maintenance and support to the child? The answer to that question is no. The General Assembly created a binary system in which a parent has a general obligation of support toward a child when the parent's responsibilities are not the subject of a court order and a specific obligation of support when a court has determined the parent's obligation by decree.

*R.C. 3107.07 is connected to Ohio's statutory child-support scheme*

{¶ 18} R.C. 3107.07, the statute declaring when the consent of a parent is not required for a minor's adoption, does not exist in a vacuum. It is part of a

_____

1. The term "no-support order" encompasses, for purposes of this opinion, orders terminating previously ordered support, zero-support orders, and orders modifying a previously ordered support amount to zero.

complex statutory scheme involving laws that regulate and control the most intimate aspect of our personal lives—our family relationships.

{¶ 19} R.C. 3103.03(A) contains the statutory declaration that all spouses and parents have an obligation to support themselves, each other, and their minor children from their own property and labor:

> Each married person must support the person's self and spouse out of the person's property or by the person's labor. If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able. The biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor.

{¶ 20} The statute subsumes the common-law obligation: "The common-law duty to support one's minor children has been replaced by R.C. 3103.03." *Nokes v. Nokes*, 47 Ohio St.2d 1, 5, 351 N.E.2d 174 (1976); *see also Haskins v. Bronzetti*, 64 Ohio St.3d 202, 204, 594 N.E.2d 582 (1992) (lead opinion) ("The General Assembly has, in various instances, codified the common-law duty imposed on parents to support their minor children. For example, former R.C. 3103.03 placed a statutory burden on the mother and father, regardless of their marital status, to support their minor children" [footnote omitted]).

{¶ 21} R.C. 3103.03 sets forth a parent's obligation to support his or her children in the absence of a child-support order. "Under R.C. 3103.03, all parents, whether married or not, have a duty to support their minor children; it follows logically from this that all children have a right to be supported by their parents, regardless of the parents' marital status." *In re Dissolution of Marriage of Lazor*, 59 Ohio St.3d 201, 202, 572 N.E.2d 66 (1991). But this general statutory declaration does not end our inquiry; it is merely the beginning.

**{¶ 22}** Another statute comes to the forefront when marriages end. "R.C. 3109.05 sets forth the power of the trial court to make child support orders when a marriage terminates." *Meyer v. Meyer*, 17 Ohio St.3d 222, 223, 478 N.E.2d 806 (1985). The domestic-relations court "may order either or both parents to support or help support their children" pursuant to R.C. 3109.05; parental obligations are determined by a support order issued in compliance with the process set forth in R.C. Chapter 3119.

**{¶ 23}** Child support is established in a similar manner in cases in which the parents of the child were never married and paternity has been established in a paternity action or by an acknowledgment of paternity in the juvenile court. *See* R.C. 3111.13(C) and 3111.29. The juvenile court may issue a child-support order; "[t]he juvenile court shall exercise its jurisdiction in child support matters in accordance with section 3109.05 of the Revised Code." R.C. 2151.23(F)(2). Therefore, like the domestic-relations court, the juvenile court determines a parent's support obligation pursuant to R.C. 3109.05 in accord with R.C. Chapter 3119.

**{¶ 24}** The trial court also has the ability to modify the child-support order:

> It has long been recognized in Ohio that a court retains continuing jurisdiction over its orders concerning the custody, care, and support of children * * *. A child affected by such an order is considered a ward of the court, which may always reconsider and modify its rulings when changed circumstances require it during the child's minority.

*Singer v. Dickinson*, 63 Ohio St.3d 408, 413-414, 588 N.E.2d 806 (1992). In the event of a substantial change of circumstances, the court may modify the child-support amount. R.C. 3119.79. When the court issues or modifies a child-support

10

order, it does so by applying statutory guidelines; it "calculate[s] the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3109.02.

{¶ 25} When modifying a child-support order, the trial court has the authority to reduce a child-support order to zero in two ways. Pursuant to its authority under R.C. 3119.22 and 3119.23, the court may deviate from the child-support guidelines and modify a parent's obligation of support to zero. And pursuant to R.C. 3119.06, the court has the discretion to reduce a minimum order of support to zero. But the court maintains jurisdiction to make future modifications to the order.

*The child-support order establishes the parent's obligation*

{¶ 26} Once issued, the child-support order determines what the parent's obligation is. As noted above, R.C. 3103.03 replaced the common-law obligation to support one's minor children. And this court has stated that "[t]he judicial decree of support simply incorporates the common-law duty of support." *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 305, 408 N.E.2d 680 (1980). That incorporation of the common-law obligation of support—itself subsumed into R.C. 3103.03— into the judicial decree means that there are not side-by-side obligations to provide support, one under R.C. 3103.03 and one under a child-support order issued pursuant to R.C. 3109.05. Instead, the child-support order, when it exists, establishes the obligation.

{¶ 27} Ohio's statutory scheme regarding families and children makes clear that there are two statuses of parental obligation: first, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general obligation once the court issues its decree. When R.C. 3107.07(A) uses "or" in the phrase "by law or judicial

decree," it recognizes that a parent's obligation of support can have one of two possible statuses—general or specific. But a parent can have only one obligation status at a time. "To additionally compel the application of R.C. 3103.03 when there is already a valid judicial order in existence would be to incorrectly interpret R.C. 3107.07 to mean: 'as required by law *in addition to a* judicial decree where a * * * court has determined that child support should be not set.' " (Emphasis sic.) *In Matter of Adoption of Jarvis*, 9th Dist. Summit No. 17761, 1996 WL 724748, *5 (Dec. 11, 1996). A parent is subject either to the general obligation or to a specific obligation and is evaluated accordingly.

*The father's obligation under R.C. 3107.07(A) is defined by the Clermont County support order*

{¶ 28} Here, the father's child-support obligation was determined by the Clermont County Juvenile Court. A juvenile court has continuing jurisdiction to modify a child-support obligation. In this case, the mother requested that the father's existing obligation of child support be terminated and that any child-support arrearages he owed be vacated. It is undisputed that the trial court had the authority to reduce the existing child-support obligation to zero. The trial court could have used one of two vehicles: its authority under R.C. 3119.22 and 3119.23 to deviate from the child-support guidelines or its authority under R.C. 3119.06 to reduce the minimum order of support to zero. The court granted the mother's request, ordering as follows: "[T]he Defendant's current support obligation is terminated at the request of Plaintiff. At Plaintiff's request, the outstanding support arrearage is reduced to $0.00. CSEA is hereby directed to adjust its records accordingly."

{¶ 29} The court's order means that for the time period at issue in this case, the father's duty "to provide for the maintenance and support of the minor as required by * * * judicial decree," R.C. 3107.07(A), was reduced to zero. The only question remaining is whether after the trial court reduced the child-support

12

obligation to zero, the father had some other obligation under the statutory scheme to continue to provide maintenance and support to B.I. He did not.

{¶ 30} As set forth above, R.C. 3103.03(A) imposed a general obligation on the father to support B.I. from his own property and labor. However, once the parties invoked the jurisdiction of the juvenile court to establish parentage, calculate child support pursuant to the guidelines, and issue an order of child support pursuant to the guidelines, the court's decree thereafter superseded the general obligation of support set forth in R.C. 3103.03(A). If the support order did not, in fact, supersede the father's general obligation of support under R.C. 3103.03(A), then the mother's attempt to modify the existing child-support order would have been a vain act—it would have been of no benefit to the father if after the termination of his current obligation under the support order, he remained obligated under R.C. 3103.03(A) to provide maintenance and support.

{¶ 31} The juvenile court had jurisdiction to relieve the father of his prior child-support obligation at the mother's request and has continuing jurisdiction to modify the father's current support obligation from zero to an amount calculated by the court. This is not an instance of there being no support order in place; it is an instance of a no-support order that is subject to modification.

{¶ 32} The General Assembly has enacted a specific statutory scheme instructing courts how to calculate child-support amounts and has given those courts discretion to deviate from the child-support guidelines, including the authority to modify a parent's child-support obligation to zero. This policy decision to allow a court with jurisdiction to deviate from the child-support guidelines and relieve a parent of an obligation of support is not for us to question. As members of the judiciary, ours is not the realm of creating policy; the General Assembly is "the arbiter of public policy in Ohio." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210 ¶ 31.

*The Fifth District erred in* In re Adoption of A.S. *in creating a support obligation for purposes of R.C. 3107.07(A) based on a criminal statute*

**{¶ 33}** In the conflict case *In re Adoption of A.S.*, 2011-Ohio-1505, the father had been ordered to pay $0.00 in child support pursuant to a paternity action in Franklin County. But the Fifth District incorporated a criminal statute, R.C. 2919.21(A)(2), to determine whether a parent has "failed * * * to provide for the maintenance and support of the minor *as required by law* or judicial decree" (emphasis added), R.C. 3107.07(A). *Id.* at ¶ 20-22, 29. In *A.S.*, the Fifth District determined that the criminal statute provides the applicable "law" in "as required by law."

**{¶ 34}** R.C. 2919.21(A)(2) reads, "No person shall abandon, or fail to provide adequate support to * * * [t]he person's child who is under age eighteen * * *." This is essentially the same obligation imposed under R.C. 3103.03(A), which reads, "The biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." The obligation to provide for the child is the same under both statutes; the difference is that R.C. 2919.21(A)(2) imposes a criminal penalty. Perhaps because a parent's child-support obligation under R.C. 3103.03(A) is so clearly superseded by the obligations imposed by a child-support order pursuant to R.C. 3109.05, the Fifth District attempted in *A.S.* to bring in through the back door that same obligation for purposes of R.C. 3107.07(A) under a different statute. That does not work.

**{¶ 35}** If we concluded that R.C. 2919.21(A)(2) creates a separate support obligation, the probate court would have to determine as part of the R.C. 3107.07(A) analysis whether the parent objecting to an adoption has failed to comply with that obligation; that is, to find that the parent failed to support the child as required by law, the court would be required to conclude that the parent violated

14

R.C. 2919.21(A)(2). But can there be a violation of R.C. 2919.21(A)(2) if a court has modified the parent's child-support obligation to zero? Ohio courts say no.

{¶ 36} In *Rowland v. State*, 14 Ohio App. 238, 239 (3d Dist.1921), the defendant had been convicted of a criminal offense under G.C. 1655 for failing to contribute to the support of his minor child. The statute provided that "[w]hoever is charged by law with the care, support, maintenance or education of a minor * * * and is able to support or contribute toward the support or education of such minor, fails, neglects, or refuses so to do" is guilty of a criminal offense. But the child's parents' divorce decree had stated that "the custody, care, education, control, support and maintenance of the child are awarded to the wife" and that the defendant was "released from any further responsibility regarding the child." *Id.* at 238. The court reversed the conviction, holding that the defendant was no longer obligated to support the child and that as long as the order remained in force, it was a defense against a prosecution for a failure to support the child. *Id*. at 239-240.

{¶ 37} In *State v. Holl*, 25 Ohio App.2d 75, 266 N.E.2d 587 (3d Dist.1971), the Auglaize County Juvenile Court had found the defendant guilty of nonsupport of his daughter, fining him and ordering him imprisoned for 30 days. The imprisonment was suspended on the condition that he pay $10 a week to the child's mother until the child reached the age of 18. However, the defendant had been paying $10 a month for support of the child pursuant to a decree issued by the Auglaize County Court of Common Pleas when it awarded custody of the child to her mother. On appeal, the Third District reversed the conviction, holding, "It is anomalous that, while complying with one court order for support, a person could be found guilty of nonsupport in another court. Compliance with the Common Pleas Court order is a bar to prosecution for nonsupport in the Juvenile Court." *Id.* at 77.

{¶ 38} Because compliance with a juvenile court's no-support order would likewise be a bar to a parent's prosecution for a failure to support a child, a probate

court could not find that the parent violated R.C. 2919.21(A)(2) by relying on the no-support order and therefore could not find that the parent failed to provide the support "required by law" for purposes of R.C. 3107.07(A).

*The effects of a contrary holding are unacceptable*

{¶ 39} The most important consequence of the contrary holding advocated by the stepfather is that a parent—even one that has continuous and meaningful contact with his or her child—could forever lose all contact with that child by relying on a court's no-support order. The stepfather argues that even when there is an order canceling child support, a probate court still must separately assess a parent's independent statutory *and* common-law duties to support his or her child. If we concluded that another source imposes on that parent a separate obligation to provide child support, then the parent would not be able to rely on a valid court order setting forth child-support responsibilities. To conclude that a zero-support order is not determinative of the necessary level of maintenance and support "required by law or judicial decree" would essentially mean that the court order specifically addressing the obligor's financial responsibility to the child is invalid; instead, some other amorphous obligation would set the level of child support that the parent must provide in order to maintain the parent-child relationship.

{¶ 40} And this would be the case for any child-support order, not just a no-support order. A parent could no longer simply comply with a judicial decree setting a low, moderate, or even high level of support—whether the parent's consent is necessary for the adoption of his or her child would depend on what constitutes "adequate support" under R.C. 2919.21(A)(2) or some other measure as determined by the probate court.

{¶ 41} Further, adoption of the stepfather's reading of R.C. 3107.07(A) would undermine the integrity of child-support orders. In the absence of fraud or lack of jurisdiction, "a judgment is considered 'valid' (even if it might perhaps have been flawed in its resolution of the merits of the case) and is generally not subject

16

to collateral attack." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 25. "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

{¶ 42} Every day, families rely on court orders to define parents' lawful obligations. They structure their lives around what the court has ordered. Our decision today ensures that the judgment of the court with the jurisdiction to set child-support levels can be relied upon.

## CONCLUSION

{¶ 43} The General Assembly did not create a child-support system in which a domestic-relations or juvenile court determines by court order an adequate level of child support, only to have a probate court sever the parental rights of a parent because the parent abided by that support order. Therefore, pursuant to R.C. 3107.07(A), a parent's nonsupport of his or her minor child pursuant to a zero-support order of a court of competent jurisdiction does not extinguish the requirement of that parent's consent to the adoption of the child.

{¶ 44} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

FRENCH, DEWINE, and DONNELLY, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion.

FISCHER, J., dissents, with an opinion.

STEWART, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 45} With one limitation, I join Justice Stewart's dissenting opinion in concluding that this is not a case in which there is a judicial order establishing child support. The majority creates a legal fiction with the term "no-support order" and

incorrectly uses that term to describe three factually distinct scenarios: "orders terminating previously ordered support, zero-support orders, and orders modifying a previously ordered support amount to zero." Majority opinion at ¶ 16, fn. 1. Thus, I would also conclude that the proper course is to reverse the court of appeals' judgment and remand the case to the probate court to determine whether the father had justifiable cause for failing to provide maintenance and support for his child. I do not, however, join Justice Stewart's dissenting opinion to the extent that it discusses the burden of proof and the clear-and-convincing-evidence standard or suggests a need to overrule case law that is not at issue in this case. *See* dissenting opinion, Stewart, J., at ¶ 66-68.

_____

**FISCHER, J., dissenting.**

{¶ 46} I respectfully dissent because the majority sets forth an interpretation of R.C. 3107.07(A) that I believe ignores the plain language of the statute.

## I. Plain Language of R.C. 3107.07(A)

{¶ 47} In answering the certified question, we must determine the meaning of the language used by the legislature in R.C. 3107.07(A). When considering the meaning of a statute, our "primary goal * * * is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. We first consider the "plain meaning of the statutory language." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52. If that language is "unambiguous and definite," we apply it "in a manner consistent with the plain meaning of the statutory language." *Lowe* at ¶ 9. We do not look to the canons of statutory construction when the plain language of a statute provides the meaning. *See Hartmann v. Duffey*, 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170, ¶ 8, citing *Lake Hosp. Sys. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994).

**{¶ 48}** R.C. 3107.07(A) provides that a parent's consent to an adoption is not required if "without justifiable cause" the parent has failed to provide for the "maintenance and support of the minor as required by law *or* judicial decree" during the relevant time period. (Emphasis added.) "The legislature's use of the word 'or,' a disjunctive term, signifies the presence of alternatives." *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 18, citing *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 51-52, and *Pizza v. Sunset Fireworks Co., Inc.*, 25 Ohio St.3d 1, 4-5, 494 N.E.2d 1115 (1986).

**{¶ 49}** Thus, under the plain language of R.C. 3107.07(A), a parent's consent to an adoption is not required if the parent *either* has failed to provide support for the minor as required by law *or* has failed to provide support for the minor as required by judicial decree. The parent's failure to fulfill *either* of the two obligations identified in R.C. 3107.07(A) is sufficient for the court to move on to the next step of the analysis and examine whether the parent had "justifiable cause" for the failure.

**{¶ 50}** To conclude, as the majority does, that the existence of a judicial decree that relieves a parent of an obligation to pay child support is dispositive of all maintenance-and-support obligations relevant to R.C. 3107.07(A), we would need to rewrite the statute to provide that a parent's consent to an adoption is not required if, without justifiable cause, the parent has failed to provide support for the minor "as required by judicial decree, or if there is no judicial decree, as required by law." The majority's rewritten version of the statute may or may not be wise; indeed, the legislature may do well to enact the majority's rewritten version. Nonetheless, when a statute's meaning is clear and unambiguous, no construction is necessary and courts will not add or delete words from that statute to change its effect so that it provides increased protections of parental rights. *See*

*Armstrong v. John R. Jurgensen Co.*, 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 12.

## II.  How R.C. 3107.07(A) Should be Applied

{¶ 51} R.C. 3107.07(A) provides that when determining whether a parent's consent is required for an adoption to proceed based on an alleged unjustifiable failure to provide maintenance and support for the child, a court must (step one) examine any relevant judicial decree.  Regardless of whether there is a judicial decree ordering the parent to provide some level of support, a judicial decree ordering zero support, or no relevant judicial decree, the court also must (step two) determine the level of support required by "law" other than by judicial decree.  The court then must (step three) determine whether the nonconsenting parent has failed to meet either or both of the legally required levels of support during the relevant one-year period.  Finally, if the court determines that the parent has failed to meet either or both of the legally required levels of support during the relevant one-year period, the court then must (step four) weigh several factors, including but not limited to the level of support ordered in any judicial decree as well as the facts found by the court that issued that order, and determine whether there was justifiable cause for that parent's failure.  After this simple, multi-step process is complete, the court will be able to determine whether the parent has forfeited the right to object to the adoption pursuant to R.C. 3107.07(A).

## III.  A Judicial Decree Impacts Multiple Steps in the R.C. 3107.07(A) Analysis

{¶ 52} It is important to explain that a judicial decree ordering zero child support plays an important role in the various steps in the analysis required under R.C. 3107.07(A).

{¶ 53} First, in many cases, the facts found by the court that issued a decree relieving a parent of a child-support obligation may support a court's conclusion, after weighing all the relevant factors, that the parent has no other legal obligation

to provide for the maintenance and support of the child. For example, it is reasonable to assume that a substantial percentage of judicial decrees relieving a parent of a child-support obligation are issued because the parent lacks the ability and resources to provide support. Thus, while a judicial decree relieving a nonconsenting parent of a child-support obligation is not dispositive in adoption-consent cases, the facts found by the court that issued that decree may often result in dismissal of the adoption petition.

{¶ 54} Second, even when a judicial decree does not require the noncustodial parent to provide support but that parent has the resources to do so, there will be situations in which the parent will have "justifiable cause" for failing to provide maintenance and support as required by law. For example, the court should include in its weighing process whether offers of assistance from the noncustodial parent were rebuffed by the custodial parent and whether the custodial parent agreed to the no-support decree rather than contested it. Indeed, in the context of an alleged failure to provide maintenance and support, barring facts that were unknown to the court or a change in circumstances for the noncustodial parent, it may be a rare case in which a valid judicial decree ordering zero support is in place but the parent's consent is not needed for the adoption to proceed.

## IV. Conclusion

{¶ 55} I would answer the certified-conflict question in the negative and hold that a judicial decree that relieves a parent of a child-support obligation is not dispositive of all maintenance-and-support obligations relevant to R.C. 3107.07(A). I would accordingly remand this case to the probate court for that court to determine whether any "law" required appellee, G.B., to provide maintenance and support for B.I. for the relevant one-year period.

{¶ 56} For these reasons, I respectfully dissent.

———————————

**STEWART, J., dissenting.**

**{¶ 57}** A judicial order that relieves a parent of a child-support obligation previously imposed by a court does not, and should not, function as a matter of law the same way as a judicial order establishing a child-support obligation. The majority opinion goes to great lengths to lay out the statutory scheme of court-ordered child support, but this is not a case in which there is a judicial order establishing support. In this case, the juvenile-court order at issue terminated the father's child-support obligation that had been previously ordered by the court and there is no dispute that the father had failed to support his child during the year prior to the filing of the adoption petition. Under these circumstances, R.C. 3107.07(A) requires the probate court to determine, by clear and convincing evidence, whether the father's failure to provide support is without justifiable cause. I would answer the conflict question in the affirmative, adopt both propositions of law asserted by the petitioner-stepfather, reverse the court of appeals' judgment, and remand this case to the probate court to determine whether there is clear and convincing evidence that the father's failure to provide maintenance and support was without justifiable cause.

**{¶ 58}** When the Revised Code speaks of child support "required by law or judicial decree," *id.*, it refers to what this court has long acknowledged: there are separate common-law and statutory duties to support a child. *See, e.g.*, *Smith v. Smith*, 109 Ohio St.3d 285, 2006-Ohio-2419, 847 N.E.2d 414, ¶ 11 (stating that a parent's "duty to support his child is manifest at common law and in statutory law"); *Haskins v. Bronzetti*, 64 Ohio St.3d 202, 205, 594 N.E.2d 582 (1992) (plurality opinion) ("Both common and statutory law in Ohio mandate that a parent provide sufficient support for his or her child").

**{¶ 59}** The duty of support imposed by the common law was "to provide reasonably" for the maintenance of a parent's minor children. *Pretzinger v. Pretzinger*, 45 Ohio St. 452, 458, 15 N.E. 471 (1887), *overruled on other grounds*, *Meyer v. Meyer*, 17 Ohio St.3d 222, 478 N.E.2d 806 (1985), syllabus. This

obligation has been construed as one to provide for the child's "necessaries," which we have defined in a related context as "food, shelter, clothing, and medical services." *Embassy Healthcare v. Bell*, 155 Ohio St.3d 430, 2018-Ohio-4912, 122 N.E.3d 117, ¶ 4 (construing doctrine according to which a husband was liable to third parties for necessaries they had provided to his wife).

{¶ 60} The statutory duty of child support requires a "biological or adoptive parent of a minor child" to "support the parent's minor children out of the parent's property or by the parent's labor." R.C. 3103.03(A). A parent's duty under R.C. 3103.03(A) is separate and apart from any child-support obligation that a court has imposed on that parent. *Hoelscher v. Hoelscher*, 91 Ohio St.3d 500, 501, 747 N.E.2d 227 (2001).

{¶ 61} When a court enters a child-support order, that order supersedes any duty of support under R.C. 3103.03(A) or the common law. *See Meyer* at 224. But when a judicial decree subsequently relieves a parent of the court-ordered obligation, the duty of support still exists. To hold otherwise would effectively eliminate any duty that a parent has to support his or her child.

{¶ 62} To illustrate why this is the case, suppose that an obligor parent had a court-ordered child-support obligation terminated on the grounds that the parent, perhaps being incarcerated or disabled, no longer had either the financial means to provide support or any reasonable prospect of being able to provide support. Now suppose that this obligor parent later obtained a financial windfall. The obligor parent would once again have the means to provide child support. The support duty would apply even if the custodial parent had not yet obtained a new child-support order. *Hoelscher* at 501-502.

{¶ 63} When the juvenile court terminated the father's court-ordered child-support obligation and arrears in this case, it did not order "zero" support or order the father not to support his child. It would defy logic to think that any court order or statute would mandate that a parent not support his child. The juvenile court's

August 19, 2010 order states that "Defendant's current support obligation is terminated at the request of Plaintiff. At Plaintiff's request, the outstanding support arrearage is reduced to $0.00. CSEA is hereby directed to adjust its records accordingly." Nothing in the juvenile court's order could possibly be construed as ordering the father to not support his child. By terminating the existing child-support obligation, the court did nothing more than relieve the father of his judicially ordered obligation to pay child support such that neither the mother nor the child-support enforcement agency could hold him accountable for not complying with that support order.

{¶ 64} Additionally, the fact that the order terminating the father's child-support obligation is subject to modification is irrelevant in this case. Any notion that it would be incumbent on the custodial parent (the mother in this case) to institute subsequent proceedings against the father to reimpose a duty to support his child is equally troubling. The Father's common-law duty to provide for the child's necessaries—food, shelter, clothing, and medical services—remained. *See State ex rel. Wright v. Indus. Comm.*, 141 Ohio St. 187, 189-190, 47 N.E.2d 209 (1943) (dependency is based on the child's right to support, and parents are charged by statutory and common law with the duty of supporting their child; the obligation of a parent to support his minor children is not excused when no order was made for support of the children).

{¶ 65} The father had a duty of support notwithstanding the termination of his existing court-ordered support obligation. There is no dispute that the father had failed to pay child support for the year prior to the adoption petition's filing, so the only remaining question for purposes of the R.C. 3103.07(A) analysis is whether his failure to provide child support was justifiable. R.C. 3107.07(A) requires the probate court to answer that question by considering all relevant evidence before it. Thus, I would hold that the probate court erred by accepting as

conclusive evidence of justifiable cause the juvenile court's order terminating the father's existing court-ordered support obligation.

{¶ 66} I would also overrule previous decisions of this court that place the burden on the adoption petitioner to prove by clear and convincing evidence that a parent has failed, without justifiable cause, to support his child. *See In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph one of the syllabus; *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph one of the syllabus; *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 22. The statute places no such burden on the petitioner.

{¶ 67} R.C. 3107.07(A) states that consent to an adoption is not required of a parent of a minor when it is alleged in the adoption petition and the court finds by clear and convincing evidence that the parent has failed without justifiable cause to support the minor as required by law or judicial decree. By the plain wording of the statute, the petitioner need only allege that a parent has failed, without justifiable cause, to support his child. The statute also makes clear that it is incumbent on the trial court to find (not for the petitioner to prove) by clear and convincing evidence that the parent has failed without justifiable cause to support the child.

{¶ 68} To be sure, any claimant or petitioner who moves a court for any kind of judicial action risks the probability that he will not be granted the relief he seeks absent evidence in support of what he claims or alleges. But this statute places no burden of proof on the petitioner, and the General Assembly clearly knows how to do so. *See, e.g.*, R.C. 2953.23(A)(1)(b) (requiring that a postconvicton "petitioner *show[]*" by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the petitioner guilty [emphasis added]). To illustrate the point, if an adoption petitioner alleges that a parent's consent is not required because the parent has failed without justifiable cause to support his child within the year prior to the petition's filing and that parent concedes that he has not supported his child but presents evidence in support of

justifiable cause that he is addicted to drugs or alcohol and uses his money to support his habit, that information would be sufficient in and of itself for the probate court to make findings and determine whether the parent's consent is required for the adoption. And yet, the petitioner would have done nothing more than make the allegation. It makes no sense to require the petitioner to prove a negative. *In re Adoption of Masa*, 23 Ohio St.3d at 169, 492 N.E.2d 140 (Douglas, J., dissenting). Furthermore, any due-process rights of the parent are protected by the fact that the trial court's findings must be based on evidence that is clear and convincing.

{¶ 69} In this case, the probate court had before it evidence that the father had failed to support his child for the relevant one-year period, that he had been relieved of his court-ordered child-support obligation, that he was incarcerated, and that he had had access to nominal funds in his prison commissary account. The probate court understands its obligation to strictly construe any exception to the requirement of parental consent to adoption in favor of protecting the parental rights of natural parents. *See In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, 933 N.E.2d 245, ¶ 6. But it is the probate court that is tasked with weighing all relevant evidence and making a determination based on evidence that is clear and convincing.

{¶ 70} The majority opinion reaches beyond the question presented in this case to make a decision that should be made by the probate court. A juvenile court's order terminating a parent's judicially ordered child-support obligation does not, as a matter of law, relieve that parent of his duty to provide maintenance and support for his child under R.C. 3103.03(A) and the common law. The majority opinion in this case incorrectly equates an order terminating a child-support obligation with an order establishing such an obligation. I would simply hold that in an adoption-consent case under R.C. 3107.07(A), when a court has terminated a parent's court-ordered child-support obligation, and the parent has not provided maintenance and

26

support for the applicable one-year period, the probate court must determine whether that parent's failure to support was without justifiable cause.

{¶ 71} I therefore would reverse the court of appeals' judgment and remand this case for the probate court to consider all relevant evidence presented to determine whether the father had justifiable cause for failing to provide maintenance and support for his child.

_____

Lindhorst & Dreidame Co., L.P.A., and Bradley D. McPeek, for appellant.

Susan Mineer, for appellee.

Mary Catherine Barrett, urging affirmance for amicus curiae, A.G.

_____