[Cite as *In re E.G.C.*, 2021-Ohio-276.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

IN RE:                      :

     E.G.C.                 :          CASE NO. CA2020-09-014

                             :          <u>O P I N I O N</u>
                                        2/1/2021

                             :

                             :

                             :

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20195020

Peterson Law Office, Shaun D. Peterson, 116 North Walnut Street, Wilmington, Ohio 45177, for appellee

Smith, Meier & Webb, LPA, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellant

**BYRNE, J.**

{¶1} Appellant, I.J.O. ("Father"), the biological father of E.G.C. ("Child"), appeals the entry of the Clinton County Court of Common Pleas, Probate Division, finding that Father's consent was not required in the adoption of Child by Child's stepfather, T.C.

("Stepfather").[1]  R.C. 3107.07(A) provides that a parent's consent to an adoption is not required if the probate court finds by clear and convincing evidence that the parent has "failed without justifiable cause to provide more than de minimis contact with the minor" for a one-year period.  The probate court found that Father's contact with Child was de minimis.  However, the probate court did not address the question of whether Father's de minimis contacts were "without justifiable cause."  We therefore reverse and remand this matter for further proceedings on the question of whether Father's de minimis contacts with Child were "without justifiable cause" under R.C. 3107.07(A).

## I.  Factual Background

### A.  Facts Addressed in the Probate Court's Entry

{¶2}    Child was born in 2012.  Child initially resided in Clinton County, Ohio with both of her natural parents, Father and B.C. ("Mother").  The record reflects that Father and Mother were never married.  In 2014, when Child was approximately 18 months old, Mother and Child moved out of the residence.  For the next two and one-half to three and one-half years Father visited Child every other weekend and some weekdays.  Child's paternal grandfather provided childcare while Mother worked.  Father's child support obligations were administratively established in February 2015.

{¶3}    Father married S.T. ("Wife") in April 2016.  The marriage lasted six months.

{¶4}    Father saw Child for the last time at some point in 2017.  From that point forward Father did not send any letters, cards, or presents to Child, and Father did not visit Child.  Child's paternal grandparents spoke to Child through Skype or FaceTime on a few occasions, and Father may have been present in the background but there was no communication between Father and Child during those electronic exchanges.  At some

---

1. Pursuant to Loc.R. 6(A), we sua sponte removed this appeal from the accelerated calendar.

point Father moved to Pennsylvania. Father remained in Pennsylvania for at least a year before moving back to Clinton County.

{¶5} At some point in 2017 Mother became uncomfortable with allowing Father to see Child unless supervised because Wife told Mother that Father had engaged in inappropriate conduct with Child, including Father taking showers naked with Child and Father watching "daddy/daughter porn."[2]

{¶6} Mother married Stepfather in June 2018. A little over a year later, in August 2019, Stepfather filed a stepparent adoption petition in the probate court. Stepfather alleged that Father's consent was not required because Father had not seen Child in more than one year. On June 24, 2020, the probate court held a hearing to determine whether Father's consent was necessary for the adoption. The probate court subsequently issued an entry deciding that Father's consent to Stepfather's adoption of Child was not necessary under R.C. 3107.07(A) because Father had only de minimis contact with Child in the year prior to the filing of the adoption.[3] Father now appeals.

{¶7} We pause to note that after the filing of the adoption petition Father filed an action in the Clinton County Court of Common Pleas, Juvenile Division, seeking parenting time. That action is currently pending in the juvenile court but is not proceeding pending the conclusion of the adoption case. Father did not seek any legal remedies—such as seeking parenting time—prior to the filing of the adoption petition.

**B. Testimony and Arguments Not Addressed in the Probate Court's Entry**

---

2. The record is unclear whether Wife's reference to "daddy/daughter porn" was a reference to a type of pornography, a reference to Father and Child watching pornography together, or something else.

3. The court's Entry deciding that Father's consent was not necessary under Section 3107.07(A) was not the final step of the adoption process, but it was a final appealable order nonetheless. *In re Adoption of Greer*, 70 Ohio St. 3d 293, 298 (1994) ("We thus hold that a trial court's finding pursuant to R.C. 3107.07 that the consent to an adoption of a party described in R.C. 3107.06 is not required is a final appealable order"); *see also In re Adoption of C.A.L.*, 12th Dist. Clermont No. CA2015-01-010, 2015-Ohio-2014, ¶ 12 ("The Ohio Supreme Court has expressly held that a trial court's finding that consent is not required pursuant to R.C. 3107.07 is a final appealable order").

{¶8}   The probate court's entry did not address or discuss any of the following testimony that was offered at the June 24, 2020 hearing.

{¶9}   Mother admitted that in 2017 she quit allowing Child to visit Father or Father's family because of her concerns about Father's inappropriate behavior as described to her by Wife.  Mother admitted that when she was asked if Father and his family could see Child, "I told them no."  Mother admitted that she took these actions because she believed "everything [Wife] said" about Father's alleged inappropriate behavior.  She also testified that she had concerns that child was saying things about "touching boobies" and talking about kissing on the mouth, which she attributed to Father's influence.  Mother testified that her decision to quit allowing Child to see Father was for Child's "better safety," but she never brought her concerns to law enforcement.  Mother also admitted that she blocked Father and thirty of his family members on Facebook and set her Facebook profile to "private."

{¶10}   Mother testified that she confronted Father regarding her concerns about his behavior in 2017, and that after that point Father never again requested to see Child.

{¶11}   Father offered a different version of what happened.  Father testified that he attempted to reach out to Mother about Child on multiple occasions after 2017.  Father testified that he created several new Facebook accounts under his name and used those accounts to contact Mother through Facebook Messenger.  Father testified that Mother would respond by stating that Father could not see Child, and that Mother blocked each new Facebook account he created.  Father testified that he made attempts to contact Mother on seven different occasions between August 2018 and August 2019, and he testified that he had reached out to Mother on other occasions as well.  Father's aunt testified that she personally observed Father attempt to contact Mother.  Mother denied receiving Facebook messages from Father and denied that Father made any other efforts to contact her, but Stepfather, who had access to Mother's Facebook account, admitted at

least some of the Facebook messages were received.

{¶12} Mother and Father also characterized Father's move to Pennsylvania differently. While Mother testified that Father moved to Pennsylvania and never contacted Child again, Father testified that he moved to Pennsylvania when his mother, who resided in Pennsylvania, entered a coma, and that he drove back and forth between Sacramento, Pennsylvania, and Wilmington, Ohio in order to attempt to see Child on multiple occasions. Father testified further that on one of these trips, right before Christmas 2018, he bought toys, clothes, stickers, and coloring books for Child, but that Mother refused to allow him to see Child and refused to pick up the presents. Mother denied that Father contacted her at that time. Father testified to other attempts to give gifts to Child, which Mother also denied. When asked if she would have allowed Father to see Child if he had contacted her, Mother responded, "It just depends. I mean it was some pretty nasty things that happened so – I don't know."

{¶13} Father testified that he did not have Mother's phone number or address, and only knew that at some point Mother moved to New Vienna, Ohio. Mother denied ever receiving any messages from Father and noted that she had the same phone number for the past five years.

{¶14} In their posthearing briefs, the parties discussed this and other testimony extensively. Father argued that Mother's denials that he attempted to contact her damaged her credibility as a witness, that Mother actively prevented him from seeing or communicating with Child, and that Mother failed to inform him how he could contact her or Child. Father argued that Mother's actions justified his minimal contacts with Child. Stepfather argued that Father failed to make efforts to see Child, that Father moved to Pennsylvania, that even if Father wanted to see Child, he took no legal action until after the adoption petition was filed, and that Mother was legitimately concerned about Father's

behavior. Stepfather argued that Father's failure to see Child since 2017 was not justified. The probate court's entry did not address these arguments.

## II. Law and Analysis

{¶15} Father raises a single assignment of error for review:

{¶16} THE TRIAL COURT ERRED IN FINDING FATHER'S CONSENT WAS NOT NECESSARY FOR THE ADOPTION OF HIS DAUGHTER.

{¶17} In his sole assignment of error, Father argues the probate court erred by finding Father's consent to adoption was unnecessary as provided in R.C. 3107.07(A).

{¶18} The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption permanently terminates the parental rights of a natural parent. *In re L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 10. Because adoption terminates parental rights, Ohio law requires parental consent to an adoption unless a specific statutory exception exists. *In re Adoption of C.E.S.*, 12th Dist. Butler Nos. CA2020-07-069, CA2020-07-070, and CA2020-07-071, 2020-Ohio-6902, ¶ 19. "[A]ny exception to the requirement of parental consent to adoption must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re B.N.S.*, 12th Dist. Butler Nos. CA2020-03-034 thru CA2020-03-036, 2020-Ohio-4413, ¶ 27, *citing In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450, ¶ 12.

{¶19} This appeal concerns the exception to the general parental consent requirement found in R.C. 3107.07(A). That statute provides that consent to an adoption is not required by:

> A parent of a minor, when it is alleged in the adoption petition
> and the court, after proper service of notice and hearing, finds
> by clear and convincing evidence that the parent has failed

without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶20} We have repeatedly held that in order to find the R.C. 3107.07(A) exception applicable the probate court must engage in a two-step analysis. *In re J.F.M.*, 12th Dist. Butler No. CA2016-03-044, 2016-Ohio-4823, ¶ 11. First, the probate court must determine whether the parent failed to engage in more than de minimis contact with the minor or failed to provide for the maintenance and support to the minor. *Id.* Second, the probate court must determine whether the parent had "justifiable cause" for the failure to contact the minor or provide support for the minor. *Id.* The first step of the analysis is written in the alternative in the statute; as a result, the probate court need only find *either* a lack of contact with the minor *or* a failure to provide maintenance and support to the minor within the relevant time period. *In re Adoption of C.H.B.*, 3d Dist. Crawford No. 3-19-18, 2020-Ohio-979, ¶ 19; *see also In re Adoption of G.T.R.*, 12th Dist. Clermont No. CA2007-03-039, 2007-Ohio-3719, ¶ 22.

{¶21} "The petitioner bears the burden of proving each element by clear and convincing evidence. After the petitioner has established the parent's lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although, the burden of proof remains on the petitioner." *In re Adoption of O.J.B.*, 12th Dist. Warren No. CA2020-01-004, 2020-Ohio-4184, ¶ 10 (citations omitted); *In re Adoption of J.F.M.*, 12th Dist. Butler No. CA2016-03-044, 2016-Ohio-4823, ¶ 11.

{¶22} The provisions of R.C. 3107.07(A) pertaining to "maintenance and support" are not at issue in this appeal. Instead, the probate court's entry and Father's appeal only

concern the "de minimis contact" provision. We therefore only address R.C. 3107.07(A)'s provision regarding de minimis contact. "Even if a parent has completely failed to communicate with his child during the one-year statutory period, his consent will still be required if there is justifiable cause for the failure." *In re M.G.B.-E.*, 12th Dist. Clinton No. CA2018-10-016, 2019-Ohio-753, ¶ 12.

{¶23} "An appellate court applies two different standards of review to the probate court's decision on parental consent." *In re Adoption of O.J.B.* at ¶ 11. First, an appellate court applies an abuse of discretion standard of review as it relates to the probate court's decision as to whether a parent's contact with his or her child, met the statutory standard. *Id.* An abuse of discretion is more than an error of law or judgment, it is a decision that is unreasonable, arbitrary, or unconscionable. *In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 16.

{¶24} Father does not challenge the probate court's conclusion that his contacts with Child in the year before the adoption petition was filed were de minimis. In fact, Father concedes that "he has not been afforded much more than de minimis contact with [Child] in the year preceding the adoption petition." Because Father concedes that his contact with Child was de minimis, we move to the second step of the R.C. 3107.07(A) analysis.

{¶25} Second, an appellate court applies a manifest weight of the evidence standard when reviewing the probate court's determination of whether the parent's de minimis contacts were with "justifiable cause" under R.C. 3107.07(A). *In re Adoption of O.J.B.* at ¶ 12. On a manifest weight of the evidence review, this court examines the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-

Ohio-61 at ¶ 14.

{¶26} However, we are unable to determine whether the probate court clearly lost its way with regard to the second step of the R.C. 3107.07(A) analysis because the probate court did not discuss at all this step of the analysis or the testimony regarding Mother's alleged actions to block Father's contact with Child. The probate court's entire analysis under R.C. 3107.07(A) is as follows:

> In the instant case, the issue of consent turns on whether [Father] had more than a de minimis contact or was justified in not having contact in the year prior to the filing the adoption on August 27, 2019.
>
> This Court has considered all evidence of the actions that the biological father may have done to see his child. The Court has also considered any court actions father may have filed herein. Further, this Court decides that the biological father had very little communication or contact with the child, and any such said communication or contact is deemed by this Court to be de minimis.
>
> Therefore, the Court find the biological father's consent is not necessary and directs the Clerk to set the final hearing for best interest.

{¶27} Thus, while the probate court appropriately found that Father had de minimis contact with Child, the court did not address at all the second element, whether the de minimis contact was "without justifiable cause." The probate court simply found that Father's contacts with Child were de minimis and, on that basis alone, found that Father's consent to the adoption was unnecessary under R.C. 3107.07(A). But the statute's plain text explicitly requires that a probate court, in order to find that parental consent is not necessary, must find "by clear and convincing evidence" that the parent's de minimis contact with the minor was "without justifiable cause." R.C. 3107.07(A). There is no indication in the entry that the probate court made such a finding by clear and convincing evidence, or even considered the issue of "justifiable cause." The entry did not even

discuss the conflicting testimony described above regarding whether Father made efforts to contact Child and whether Mother blocked those efforts.

{¶28} When confronted with a similar failure to consider "justifiable cause" in the past we have not simply assumed that the probate court implicitly found a lack of justifiable cause. We have instead reversed and remanded for the probate court to analyze justifiable cause explicitly. This was the case in *In re M.B.G.-E.*, 12th Dist. Clinton, CA2018-10-016, 2019-Ohio-753. In that adoption case, the probate court found that the biological father's consent to an adoption was unnecessary because he had no contact or de minimis contact with the child, but, as here, the court's decision neither mentioned nor addressed the issue of justifiable cause. *Id.* at ¶¶ 21-22. We noted that "[n]othing in the probate court's decision gives any indication that the probate court considered the issue of whether Mother had interfered or impeded Father's attempts to communicate with the children." *Id.* at ¶ 22. As a result, we held that "the trial court erred in failing * * * to issue a decision that reflects consideration of the issue of justifiable cause for Father's failure to communicate." *Id.* at ¶ 24. We reversed and remanded for the probate court to consider the evidence regarding justifiable cause. *Id.* We must do the same here.

{¶29} Exceptions to the parental consent requirement must be "strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re B.N.S.*, 2020-Ohio-4413 at ¶ 27. Therefore, a trial court may not simply ignore the statutory language regarding justifiable cause. Because the probate court's decision only addressed the first step of the analysis and not the second step considering "justifiable cause," we find merit to Father's sole assignment of error. As a result, we find the probate court erred in failing to issue a decision that reflects consideration of the issue of justifiable cause for Father's failure to communicate. Accordingly, Father's sole assignment of error is sustained to the extent the necessary finding was not made. We leave it to the probate court to

determine if Father's de minimis contacts with Child were justified or not, and we have reached no conclusion on that issue.

{¶30} Judgment reversed and remanded for further proceedings regarding whether there was justifiable cause for Father's de minimis contact with Child in the relevant time period.

M. POWELL, P.J., and S. POWELL, J., concur.