[Cite as *Ashtabula Cty. Med. Ctr. v. Porter*, 2025-Ohio-803.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| ASHTABULA COUNTY MEDICAL CENTER, | CASE NO. 2024-A-0067 |
| Plaintiff-Appellant, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| STEPHEN D. PORTER, | Trial Court No. 2023 CV 00346 |
| Defendant, | |
| MEGAN D. PORTER, | |
| Defendant-Appellee. | |

## O P I N I O N

Decided: March 10, 2025
Judgment: Affirmed

*Dan A. Morell, Jr.* and *John J. Schneider*, Dan Morell & Associates, LLC, 6060 Rockside Woods Boulevard, N., Suite 200, Independence, OH 44131 (For Plaintiff-Appellant).

*William E. Riedel* and *Katherine S. Riedel*, Law Offices of Katherine S. Riedel, 1484 State Route 46 North, Jefferson, OH 44047 (For Defendant-Appellee).

EUGENE A. LUCCI, J.

{¶1} Appellant, Ashtabula County Medical Center ("ACMC") appeals the judgment of the Ashtabula County Court of Common Pleas, concluding any claim it may have against appellee, Megan D. Porter, in an action for money damages on medical debts, filed pursuant to R.C. 3103.03, Ohio's "necessaries statute" is currently hypothetical and therefore not a justiciable matter. We affirm.

{¶2} At the inception of the case, Stephen D. Porter (Ms. Porter's ex-husband) had been employed at Dasco Paper & Janitorial Supply in Ashtabula, Ohio, for approximately eight years. Mr. Porter and Ms. Porter were married on July 2, 2015. On March 7, 2021, their marriage was dissolved. During the marriage, and after March 7, 2021, Mr. Porter incurred medical expenses from ACMC in the amount of $12,925.55. In total, Mr. Porter incurred medical expenses of $6,416 prior to March 7, 2021 and $6,059.55 after March 7, 2021.

{¶3} ACMC filed a complaint on June 1, 2023, to collect upon medical expenses provided to Mr. Porter between July 20, 2017 and October 5, 2022. ACMC alleged, inter alia, the Porters were responsible to pay the cost of the medical services provided under R.C. 3103.03. ACMC's complaint demanded judgment against Mr. Porter in the amount of $12,925.55 and $6,416 against Ms. Porter.

{¶4} Ms. Porter answered ACMC's complaint and denied the allegations; she also filed a cross-claim against Mr. Porter for unjust enrichment, wherein she admitted that she and Mr. Porter were married on July 2, 2015 and the marriage dissolved on March 7, 2021. Mr. Porter did not answer the complaint but appeared for scheduled mediation. ACMC acknowledges that Mr. Porter's debt in 2022, after the dissolution of the marriage, was eligible for charity-care coverage.

{¶5} Mediation occurred in March and April 2024, during which Mr. Porter and ACMC resolved ACMC's claim against him. A consent judgment entry was submitted to the trial court for approval on April 23, 2024.

{¶6} On May 13, 2024, the trial court approved the same. Mr. Porter's balance of $12,925.55 was reduced to $8,214.34; ACMC agreed to an additional reduction for a

2

total debt of $4,654, plus interest at eight percent. Mr. Porter agreed to make timely payments of $150 per month. The consent judgment entry provided that the failure to make timely payments would result in execution on the outstanding balance of the judgment.

{¶7} Later, both Ms. Porter and ACMC filed motions for summary judgment. Ms. Porter claimed that any attempt to seek contingent liability against her if Mr. Porter failed to pay was not a justiciable issue. Ms. Porter additionally maintained that ACMC's debt was extinguished and there was no remaining controversy before the court. She further argued that ACMC does not have a claim against her under R.C. 3103.03(A) because Mr. Porter has the ability to pay the debt.

{¶8} ACMC claimed that a relevant dispute remained whether Ms. Porter is liable on any remaining debt if Mr. Porter is unable to pay. It maintained that the claim for medical debt owed by Mr. Porter, or contingently alleged against Mr. Porter, is subject to a set statute of limitations. According to ACMC, if it is not allowed to obtain a contingent-liability judgment against Ms. Porter, but Mr. Porter ceases to pay prior to satisfying the debt, ACMC would be precluded from seeking judgment against Ms. Porter because the applicable statute of limitations will have passed. ACMC maintained that a spouse's inability to pay can arise after judgment obtained against the spouse debtor. Accordingly, ACMC asserted a case in controversy existed between the remaining parties.

{¶9} Both parties duly opposed the respective motions.

{¶10} Upon consideration, the trial court agreed with Ms. Porter. In its judgment entry awarding her summary judgment, the court observed:

> In this matter, ACMC has settled the debt that [Mr. Porter] owes to it. The Terms of the claim resolution between ACMC

3

and [Mr. Porter] are set forth in the Judgment Entry issued on May 13, 2024. This settlement resolves ACMC's claim for the medical debt. ACMC's claim against [Ms. Porter] is premised upon a situation where [Mr. Porter] breaches the settlement agreement and [Ms. Porter] becomes liable for the remainder of the debt pursuant to the necessaries statute[, i.e., R.C. 3103.03]. [Mr. Porter] has not yet breached the agreement. Therefore, ACMC's controversy with [Ms. Porter] is a hypothetical. Since the controversy is "merely possible," it is not an actual, justiciable matter.

{¶11} ACMC appealed the judgment and assigns the following as error:

{¶12} "The trial court erred when it determined that the plaintiff creditor was not entitled to a judgment with contingent liability against the non-debtor spouse even though the statute of limitations on the contract debt was expiring prior to full payment when a similarly situated creditor well within the statute of limitations could institute suit against the non-debtor spouse."

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.

(Citation omitted.) *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 369-70, 1998-Ohio-389.

{¶13} ACMC generally argues that the trial court's judgment constitutes a denial of its statutory and/or equal protection right to pursue a non-debtor spouse for payment which otherwise exists if the debtor spouse becomes uncollectable or unable to pay within the relevant statute of limitations.

{¶14} R.C. 3103.03(A) provides, in relevant part: "Each married person must support the person's self and spouse out of the person's property or by the person's labor.

4

Case No. 2024-A-0067

*If a married person is unable to do so*, the spouse of the married person must assist in the support *so far as the spouse is able*." (Emphasis added.)

{¶15} The foregoing provision originates from "coverture" wherein "a married woman's legal identity merged with her husband's," thus prohibiting her from owning property, entering into contracts, or receiving credit. *Embassy Healthcare v. Bell*, 2018-Ohio-4912, ¶ 4. Given these "legal disabilities," courts developed the common-law "necessaries doctrine" to "encourage[] third parties to provide essential items and services to neglected wives." (Citations omitted.) *Id.* So, under the common law, "a husband was liable to third parties for necessaries–i.e., food, shelter, clothing, and medical services–that those third parties provided to his wife." (Citation omitted). *Id.*

{¶16} R.C. 3103.03 codified this doctrine, which has been subsequently modernized by abolishing the common law's antiquated view of the marital relationship– "the duty of support now extends to both spouses." *Embassy Healthcare* at ¶ 6. Accordingly, under the foregoing division, each spouse has a duty to support the other spouse to the extent one is unable and the other is able. In *Embassy Healthcare* at ¶ 19, the Supreme Court of Ohio considered R.C. 3103.03(A), and commented:

> The first sentence of R.C. 3103.03(A) expressly provides that "[e]ach married person must support the person's self and spouse out of the person's property or by the person's labor." The next sentence provides that "[*i*]*f* a married person is unable to" support himself or herself, "the spouse of the married person must assist in the support so far as the spouse is able." (Emphasis added.) In other words, each married person retains primary responsibility for supporting himself or herself from his or her own income or property. The nondebtor spouse becomes liable only if the debtor spouse does not have the assets to pay for his or her necessaries. A creditor must therefore first seek satisfaction of its claim from the assets of the spouse who incurred the debt. R.C.

5

3103.03 does not impose joint liability on a married person for the debts of his or her spouse.

{¶17} The initial question, accordingly, is whether Mr. Porter is unable to pay or support himself such that Ms. Porter could be liable on the debt. With respect to this question, we conclude the consent judgment entered between ACMC and Mr. Porter demonstrates Mr. Porter had a current ability to pay when he entered the judgment.

{¶18} The plain language of the statute first requires some evidence that the "married spouse" (here, Mr. Porter) is unable to pay the debt. The only evidence in the record on this point is the May 13, 2024 consent judgment which, by its entry, suggests that Mr. Porter met this prong, at least to ACMC's satisfaction.

{¶19} If Mr. Porter becomes unable to pay, the statute requires Ms. Porter to assist "so far as [she] is able." *See Ohio State Univ. Hosp. v. Kinkaid*, 48 Ohio St.3d 78, 80 (1990) (because a decedent's assets were insufficient to pay medical expenses at the time of his death, wife was liable under R.C. 3103.03, subject to the trial court's determination of her ability to pay). This secondary inquiry was not broached because Mr. Porter was, at the time of the consent judgment (and still ostensibly is at the time of this appeal), able to pay on the debt.

{¶20} In *Embassy Healthcare*, 2018-Ohio-4912, the Supreme Court of Ohio elaborated on the primary nature of a debtor-spouse's liability under the "doctrine of necessaries." The court cited other jurisdictions that had reached a similar conclusion regarding the primary nature of a debtor-spouse's responsibilities on a debt. *Id.* at ¶ 23, citing *Hickory Creek at Connersville v. Estate of Combs,* 992 N.E.2d 209, 210, 212 (Ind. App. 2013) (the doctrine of necessaries holds "each spouse . . . primarily liable for his or her independent debts"). A creditor must first seek satisfaction from the income and

6

property of the debtor spouse, "[a]nd only if those resources are insufficient may a creditor seek satisfaction from the non-contracting spouse." *Hickory Creek* at 213, citing *Bartrom v. Adjustment Bur., Inc.,* 618 N.E.2d 1, 8 (Ind. 1993). *See also Jersey Shore Med. Ctr.-Fitkin Hosp. v. Baum's Estate*, 84 N.J. 137, 141, (1980) ("a judgment creditor must first seek satisfaction from the income and other property of the spouse who incurred the debt"); *Cheshire Med. Ctr. v. Holbrook,* 140 N.H. 187, 190 (1995) (provider of necessaries must first seek payment from the spouse who received goods or services before pursuing collection from the other spouse).

{¶21} Given these points, at the time of the consent judgment Mr. Porter, the primary debtor, was able to pay the debt. This ability is evidenced by ACMC's willingness to enter the judgment. And, significantly, nothing in this court's record demonstrates he is unable to pay the agreed-upon debt set forth in the consent judgment. We therefore conclude that R.C. 3103.03(A) is, at this point, inapplicable to ACMC's claim for contingent liability against Ms. Porter.

{¶22} Moreover, we additionally conclude that, if, in the future, Mr. Porter is unable to pay the debt, then Ms. Porter's contingent liability may be considered. Unless or until that contingency occurs, ACMC's claim against Ms. Porter is not justiciable.

{¶23} The Supreme Court of Ohio has interpreted the phrase "justiciable matter" to mean an actual controversy exists, a genuine dispute between adverse parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 542 (1996). In order for a justiciable question to exist, the threat to a party must be actual and not simply potential or remote. *M6 Motors, Inc. v. Nissan of N. Olmsted, LLC*, 2014-

7

Ohio-2537, ¶ 17 (8th Dist.), quoting *Mid-Am. Fire & Cas. Co. v. Heasley*, 2007-Ohio-1248, ¶ 9.

{¶24} Further, using alternative but similar verbiage, "[i]n order to be justiciable, a controversy must be ripe for review." *Keller v. Columbus*, 2003-Ohio-5599, ¶ 26; *see also Pack v. Cleveland*, 1 Ohio St.3d 129, (1982), paragraph one of the syllabus. Article IV, Section 4(B) of the Ohio Constitution provides that "[t]he courts of common pleas . . . shall have original jurisdiction over all justiciable matters . . . as provided by law," and the Ohio Supreme Court has determined that "it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970).

{¶25} The principle of ripeness is derived from the principle that, in Ohio, "'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.'" *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89 (1998), quoting Comment*, Mootness and Ripeness: The Postman Always Rings Twice*, 65 Colum.L.Rev. 867, 876 (1965). Thus, Ohio courts may decide only "actual controversies between parties legitimately affected by specific facts. . . ." *Fortner* at 14. And the courts must "refrain from giving opinions on abstract propositions" or issuing "premature declarations or advice upon potential controversies." *Id.*; *see also Travis v. Pub. Util. Comm.*, 123 Ohio St. 355, 359 (1931).

{¶26} There has been no triggering event indicating that Mr. Porter is unable to pay the debt. Accordingly, Ms. Porter's ability to pay has not been considered (nor has

8

evidence been adduced that she would be able to pay), and any such consideration is purely hypothetical until Mr. Porter is unable to do so. We conclude that, because ACMC has not established Mr. Porter's inability to pay, imputing contingent liability upon Ms. Porter – and presuming her ability to pay – is not justiciable and represents only a potential controversy.

{¶27} ACMC argues the trial court had recently issued a judgment and opinion in a separate case in which the plaintiff health-care provider (ACMC in that case as well), prevailed on a contingent liability claim against a non-debtor spouse. *See Ashtabula Co. Medical Ctr. v. Stern*, Ashtabula C.P. No. 2022-CV-133 (Mar. 7, 2023). *Stern*, however, was a matter that was never appealed.

{¶28} ACMC attached the trial court's judgment entry from *Stern* to its appellate brief; our review of the record, however, does not show it provided the trial court with copies of the case or the docket in that matter. "[O]n this issue, [however,] the Supreme Court of Ohio has also held that 'a trial court is not required to suffer from institutional amnesia.'" *In re Adoption of L.S.*, 2020-Ohio-224, ¶ 14, quoting *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580 (1994).

> "'[I]t is axiomatic that a trial court may take judicial notice of its own docket'–including the docket in a separate case. *Indus. Risk Insurers*[*, supra,* at 580]. The trial court cannot take judicial notice of a docket 'for the truth of the matters asserted in the other litigation,' however, but only 'to establish the fact of such litigation.' *State ex rel. Coles v. Granville . . .*, 2007-Ohio-6057, . . . ¶ 20, quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992), and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)."

*In re Adoption of L.C.,* quoting *Pollard v. Elber*, 2018-Ohio-4538, ¶ 15 (6th Dist.). *See Natl. Distillers & Chem. Co. v. Limbach*, 71 Ohio St.3d 214, 216

9

Case No. 2024-A-0067

(1994) (holding that the law allows a court to take "'judicial notice' of [its] docket records" but that the relevant "cases do not state that we may take judicial notice of evidence contained in the transcripts").

{¶29} With the foregoing in mind, the docket in *Stern* indicates that ACMC filed its complaint seeking money damages against Mr. and Ms. Stern for medical services rendered. The complaint additionally alleged Mr. Stern failed to completely pay the account, leaving an outstanding balance. ACMC obtained a judgment against Mr. Stern garnishing monies toward the payment. ACMC then sought judgment on the account against both spouses. The trial court granted summary judgment in ACMC's favor because ACMC apparently established that Ms. Stern "is liable for the medical debt incurred by [Mr. Stern] during the marriage that he is unable to pay. . . . If at some future point, [Mr. Stern] is unable to pay the remainder of the debt, ACMC can collect against [Ms. Stern] without the claim being time barred." *Stern*, at 3.

{¶30} There is nothing to suggest the court in *Stern* was asked to entertain the justiciability issue. Moreover, because the matter was not appealed to this court, the trial court's judgment is, at best, persuasive. Without a more robust record, however, we decline to assume that the facts and legal analysis of the trial court in *Stern* was completely analogous to those in the instant matter. We therefore decline to hold the trial court's decision in *Stern* represents binding authority. In effect, and notwithstanding the Ashtabula County Court of Common Pleas' judgment in *Stern*, we conclude Mr. Porter is *able* to pay and therefore, in light of the plain language of R.C. 3103.03(A), until Mr. Porter is unable, any inquiry into Ms. Porter's liability is hypothetical.

10

Case No. 2024-A-0067

**{¶31}** Finally, ACMC asserts that if it is not afforded the protection of R.C. 3103.03(A) and awarded a judgment for contingent liability, it could lose its right to collect on the debt at issue because Mr. Porter may elect to file bankruptcy or the relevant, six-year statute-of-limitation period could pass before its debt is fully collected.

**{¶32}** Mr. Porter incurred medical debt with ACMC prior to the dissolution of his marriage to Ms. Porter, i.e., March 7, 2021. ACMC filed suit on June 1, 2023 and, it would appear, the medical services upon which the debt is based could be disconnected and separate. "[O]rdinarily the limitations period for an action on an account is measured by the limitations period for each separate transaction." *International Periodical Distrib. v. Bizmart, Inc.*, 2001 WL 104920 (8th Dist. Feb. 1, 2001). Prior to June 16, 2021, the statute of limitations period for a written contract was eight years. *See* former R.C. 2305.06. It is unclear whether a written contract existed in this case. If not, the statute of limitations for a contract not in writing is four years. See R.C. 2305.07.

**{¶33}** As noted above, in *Embassy Healthcare*, 2018-Ohio-4912, ¶ 19, the Supreme Court discussed the mechanics of R.C. 3103.03(A). Following that authority, Mr. Porter is primarily liable for his debt; there is no joint liability between the spouses at issue; ACMC is required to first seek satisfaction of the claim from Mr. Porter unless he is unable to pay; only then, may Ms. Porter be liable on Mr. Porter's debts *and* Ms. Porter is able to assist.

**{¶34}** ACMC's claim of contingent liability is not justiciable currently. As emphasized above, the Ohio Constitution, Article IV, Section 4(B) provides that courts of common pleas "shall have such original jurisdiction over all justiciable matters . . . as may be provided by law"). R.C. 2305.19(A) provides in pertinent part:

11

[i]n any action that is commenced or attempted to be commenced, . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after . . . the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

{¶35} Pursuant to the language in the statute, the plaintiff has the right to refile the new action within one of two dates: "'either the time left in the limitations period, or one year from the date of the prior dismissal.'" *Id.*; *Rector v Dorsey*, 2021-Ohio-2675, ¶ 7 (8th Dist.), quoting *Royster v. Imbrogno*, 2017 WL 1365793, *3 (S.D. Ohio April 14, 2017).

{¶36} ACMC's statutory and equal protection rights are therefore not abrogated by the trial court's decision. ACMC's rights are thus still protected, to some extent, by statutory law beyond its alleged claim that it is entitled to a contingent-liability judgment.

{¶37} Ohio courts have held the concept of "freedom of contract" to be fundamental to our society, and, absent some overwhelming public policy, will not disrupt the allocation of risk embodied in the contractual relationship. *See, e.g., Royal Indemn. Co. v. Baker Protective Services, Inc.*, 33 Ohio App.3d 184 (2d Dist. 1986).

{¶38} ACMC's consent judgment with Mr. Porter represents a freely-bargained-for allocation of risk as it relates to the debt which he was (and apparently still is) able to pay. If he becomes unable to pay, ACMC may comply with R.C. 2305.19(A) and refile its suit alleging Ms. Porter's liability under R.C. 3103.03(A). While the specter of a statute-of-limitations issue might still manifest itself, ACMC's election to enter into the consent judgment with Mr. Porter, who has a current ability to pay, negates the alternative mechanism to obtain payment from Ms. Porter as her (possible) liability is merely hypothetical at this point. We therefore conclude that ACMC's concern that Mr. Porter's future default or inability to pay may be a realistic worry, the non-justiciability of its claim

12

against Ms. Porter precludes use of the mechanisms set forth under R.C. 3103.03(A) until such default and he is unable to pay.

{¶39} The trial court did not err in awarding Ms. Porter summary judgment as there is no genuine issue of material fact remaining for litigation and she is entitled to judgment as a matter of law on ACMC's claim for contingent liability per R.C. 3103.03(A).

{¶40} ACMC's assignment of error lacks merit.

{¶41} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2024-A-0067